UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————x

RICKY JOSHUA BENNY,

                    Plaintiff,

    -against-

THE CITY OF LONG BEACH, THE
LONG BEACH POLICE DEPARTMENT,
POLICE OFFICER JOSEPH WIEMANN,
POLICE OFFICER ROCCO WALSH and
OFFICERS JOHN DOES 1-10.

                    Defendants.

———————————————————————x

Docket No. 20-cv-1908 (KAM)(ST)

 

**<u>MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

FACTS ..........................................................................................................................3

STANDARD OF REVIEW ...........................................................................................4

ARGUMENT..................................................................................................................6

    POINT I - THE POLICE DEPARTMENT IS NOT A PROPER DEFENDANT ...............6

    POINT II - PLAINTIFF'S SECTION 1981 CLAIM IS SUBSUMED BY HIS SECTION 1983 CLAIMS ..........................................................................................6

    POINT III - THE COMPLAINT FAILS TO ADEQUATELY PLEAD A *MONELL* CLAIM ......................................................................................................................7

    POINT IV - THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION FOR EXCESSIVE FORCE (COUNT III) AND FAILURE TO INTERVENE (COUNT VI)................................................................................................................................10

    POINT V - THE FALSE ARREST, MALICIOUS PROSECUTION AND ABUSE OF PROCESS CLAIMS (COUNT III) SHOULD BE DISMISSED....................................13

    POINT VI - THE RACE DISCRIMINATION CLAIM (COUNT II) SHOULD BE DISMISSED ..............................................................................................................18

    POINT VII - THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE FIRST AMENDMENT (COUNT II) ...........................................................................19

    POINT VIII - PLAINTIFF'S REQUESTS FOR PUNITIVE DAMAGES AGAINST THE CITY MUST BE STRICKEN FROM THE COMPLAINT ...................19

CONCLUSION.............................................................................................................20

203268.1 9/4/2020

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackermann v. Maloney,*
    223 A.D.2d 982 (3d Dep't 1996) ........................................................................17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................4, 5

*Azeez v. City of New York,*
    2018 U.S. Dist. LEXIS 143211, 2018 WL 4017580, *aff'd* 790 F. App'x 270
    (2d Cir. 2019) ...........................................................................................17

*Batista v. Rodriguez,*
    702 F.2d 393 (2d Cir. 1983) ...........................................................................9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .......................................................................................5

*Brown v. Baldwin Union Free School Dist.,*
    603 F. Supp. 2d 509 (E.D.N.Y. 2009) ..............................................................20

*Brown v. City of New York,*
    2016 U.S. Dist. LEXIS 53365 (S.D.N.Y. 2016), *aff'd*, 862 F.3d 182 (2d Cir.
    2017) ...........................................................................................................2

*Butler v. Ratner,*
    210 A.D.2d 691 (3d Dep't 1994), *lv dismissed* 85 NY2d 924 (1994) ...................17

*Caldarola v. Calabrese,*
    298 F.3d 156, 162 (2d Cir. 2002) ....................................................................16

*City of Chicago v. Morales,*
    527 U.S. 41, 108-90, 119 S. Ct. 1849 (1999) ....................................................15

*City of Newport v. Fact Concerts, Inc.,*
    453 U.S. 247 (1981) .....................................................................................20

*Cooper v. City of New York,*
    2019 U.S. Dist. LEXIS 131572 (E.D.N.Y. Aug. 5, 2019) ......................................8

*Crenshaw v. City of Mount Vernon,*
    372 F. App'x 202 (2d Cir. 2010) ...............................................................14, 15

203268.1 9/4/2020

*Crespo v. Rivera,*
    2018 U.S. Dist. LEXIS 159895 (S.D.N.Y. 2018)..................................................16

*Curiano v. Suozzi,*
    63 N.Y.2d 113 (1984)........................................................................................16, 18

*D'Alessandro v. City of N.Y.,*
    713 F. App'x 1 (2d Cir. 2017) ..............................................................................9

*Davis v. Lynbrook Police Dep't.,*
    224 F. Supp. 2d 463 (E.D.N.Y. 2002) ..................................................................6

*Duncan v. City of New York,*
    2012 U.S. Dist. LEXIS 67208, 2012 WL 1672929 (E.D.N.Y. 2012) ...............7, 10

*Effinger v. State Univ. of N.Y. State College of Optometry,*
    1998 U.S. Dist. LEXIS 2289 (S.D.N.Y. Feb. 26, 1998)........................................20

*Faber v. Metro. Life Ins. Co.,*
    648 F.3d 98 (2d Cir. 2011) ...................................................................................4

*Garcia v. Doe,*
    779 F.3d 84 (2d Cir. 2014) ...........................................................................1, 2, 6

*Gladwin v. Pozzi,*
    403 F. App'x 603 (2d Cir. 2010) ..........................................................................7

*Goldman v. Citicore I, LLC,*
    149 A.D.3d 1042 (2d Dep't 2010)........................................................................17

*Graham v. O'Connor,*
    490 U.S. 386, 109 S. Ct. 1865 (1989)..................................................................10

*Green v. Hinds,*
    2019 U.S. Dist. LEXIS 24305 (E.D.N.Y. Feb. 14, 2019) ......................................5

*Harris v. Mills,*
    572 F.3d 66 (2d Cir. 2009) ...................................................................................5

*Hauser v. Bartow,*
    273 N.Y. 370 (1937)............................................................................................16

*Hedgpeth v. Rahim,*
    893 F.3d 802 (D.C. Cir. 2018).............................................................................12

*Heicklen v. Toala,*
    2010 U.S. Dist. LEXIS 14344 (S.D.N.Y. 2010)....................................................15

203268.1 9/4/2020

*Heitzman v. Engelstad,*
    2015 U.S. Dist. LEXIS 14518 (D. Minn. 2015) .................................................13

*Hogan v. County of Lewis,*
    929 F. Supp. 2d 130 (N.D.N.Y. 2013).................................................................7

*Hudson v. McMillian,*
    503 U.S. 1, 117 L. Ed. 2d 156, 112 S. Ct. 995 (1992).....................................10

*Iacovangelo v. Correctional Med. Care, Inc.,*
    624 F. App'x 10 (2d Cir. 2015) ..........................................................................9

*Jett v. Dallas Independent School District,*
    491 U.S. 701 (1999)............................................................................................7

*Jones v. Bay Shore Union Free Sch. Dist.,*
    170 F. Supp. 3d 420, 438 (E.D.N.Y. 2016)` ......................................................8

*Jones v. City of Fort Wayne,*
    2017 U.S. Dist. LEXIS 40234 (N.D. Indiana 2017).........................................13

*Jones v. Maples/Trump,*
    2002 U.S. Dist. LEXIS 3175 (S.D.N.Y. 2002)................................................18

*Jones v. Nassau County,*
    2019 U.S. Dist. LEXIS 24563 (E.D.N.Y. Feb. 13, 2019) ................................6

*Jovanovic v. City of New York,*
    2010 U.S. Dist. LEXIS 144388, at *10 (S.D.N.Y. 2010)................................18

*Kajoshaj v. N.Y. City Dep't of Educ.,*
    543 F. App'x 11 (2d Cir. 2013) ..........................................................................4

*Kennedy-Bey v. Metro. Council,*
    2016 U.S. Dist. LEXIS 182463 (D. Minn. 2016) ............................................13

*Kovler v. Kovler,*
    2020 N.Y. Misc. LEXIS 2382 (Sup. Ct. Kings Co. 2020) ..............................17

*Leibovitz v. Barry,*
    2016 U.S. Dist. LEXIS 128231 (E.D.N.Y. 2016) (Matsumoto, J.) ...................13, 16

*Leibovitz v. City of New York,*
    2015 U.S. Dist. LEXIS 170478 (S.D.N.Y. 2015)............................................18

*Leibovitz v. City of New York,*
    2018 U.S. Dist. LEXIS 34972 (E.D.N.Y. 2018) (Matsumoto, J.) ...............2, 13, 15, 16, 19, 20

203268.1 9/4/2020

*Lieberman v. City of Rochester,*
    558 F. App'x 38 (2d Cir. 2014) ..................................................8, 10, 12

*Lozman v. City of Riviera Beach,*
    138 S. Ct. 1945, 201 L. Ed. 2d 342 (2018) ......................................8

*Malley v. Briggs*
    475 U.S. 335, 106 S. Ct. 1092 (1986)..............................................12

*Mangum v. City of New York,*
    2016 U.S. Dist. LEXIS 119213 (S.D.N.Y. 2016)............................19

*Maragh v. Roosevelt Island Operating Corp.,*
    2018 U.S. Dist. LEXIS 210481 (S.D.N.Y. Dec. 12, 2018) ..............7

*Marcavage v. City of New York,*
    2010 U.S. Dist. LEXIS 107724 (S.D.N.Y. Sept. 29, 2010), *aff'd*, 689 F.3d 98
    (2d Cir. 2012)....................................................................................14

*McKeefry v. Town of Bedford,*
    2019 U.S. Dist. LEXIS 207874 (S.D.N.Y. Dec. 2, 2019) ................9

*Mediavilla v. City of New York,*
    259 F. Supp. 3d 82 (S.D.N.Y. 2016) ................................................14

*Monell v. Dep't of Soc. Servs.,*
    436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)..............2, 7, 8, 9

*Murray v. Ruderfer,*
    2017 U.S. Dist. LEXIS 49524 (S.D.N.Y. 2017)..............................15

*Newman & Schwartz v. Asplundh Tree Expert Co.,*
    102 F.3d 660 (2d Cir. 1995) ..............................................................6

*Newton v. City of New York,*
    566 F. Supp. 2d 256 (S.D.N.Y. 2008) ..............................................18

*Nolin v. Isbell,*
    207 F.3d 1253 (11th Cir. 2000) ........................................................11

*Oriental v. Vill. of Westbury,*
    2019 U.S. Dist. LEXIS 171232 (E.D.N.Y. Oct. 2, 2019).................9

*Owen v. City of Buffalo,*
    2020 U.S. Dist. LEXIS 99662 (W.D.N.Y. 2020) .............................15

*People v. Galpern,*
    259 N.Y. 279, 181 N.E. 572 (N.Y. 1932)........................................15

203268.1 9/4/2020

*Pertusiello v. County of Suffolk,*
 2019 U.S Dist. LEXIS 141362 (E.D.N.Y. 2019) ..................................................11

*Pesola v. City of New York,*
 2017 U.S. Dist. LEXIS 140967 (S.D.N.Y. 2017)..................................................12

*Pinto v. City of New York,*
 728 Fed. App'x 26 (2d Cir. 2018) ......................................................................15

*Place v. Ciccotelli,*
 121 A.D.3d 1378 (3d Dep't 2014)......................................................................16

*Rivera v. City of N.Y.,*
 40 A.D.3d 334, 836 N.Y.S.2d 108 (1st Dep't 2007) ..........................................15

*Rolkiewicz v. City of New York,*
 2020 U.S. Dist. LEXIS 36966 (S.D.N.Y. 2020)..................................................11

*Salazar v. City of New York,*
 2016 U.S. Dist. LEXIS 89774 (S.D.N.Y. 2016)............................................11, 12

*Salgado v. DuBois,*
 2019 U.S. Dist. LEXIS 53139, 2019 WL 1409808 (S.D.N.Y. Mar. 28, 2019).........8

*Saucier v. Katz,*
 533 U.S. 194, 121 S. Ct. 2151 (2001)..................................................................12

*Schliewe v. Toro,*
 138 Fed. App'x 715 (6th Cir. 2005) ...................................................................10

*Schnauder v. Gibens,*
 679 F. App'x 8 (2d Cir. 2017) ..............................................................................9

*Scott v. District of Columbia,*
 101 F.3d 748 (D.C. Cir. 1996)......................................................................11, 13

*Skates v. Incorporated Village of Freeport,*
 265 F. Supp. 3d 222 (E.D.N.Y. 2017) ...................................................................8

*Stepanian v. City of New York,*
 2015 U.S. Dist. LEXIS 122444 (E.D.N.Y. Sept. 4, 2014) ....................................6

*Stratakos v. Nassau County,*
 2016 U.S. Dist. LEXIS 162714 (E.D.N.Y. 2016) ..................................................9

*Style v. Deputy United States Marshal Adam Mackey,*
 2020 U.S. Dist. LEXIS 101989 (E.D.N.Y. 2020) ................................................10

203268.1 9/4/2020

*Tenore v. Kantrowitz, Goldhamer & Graifman, P.C.,*
    76 A.D.3d 556 (2d Dep't 2010).................................................................16

*Thoreson v. Penthouse Intl.,*
    80 N.Y.2d 490 (1992).......................................................................20

*Torres v. Dennis,*
    2013 U.S. Dist. LEXIS 83421 (E.D.N.Y. 2013) .................................12

*Tracy v. Freshwater,*
    623 F.3d 90 (2d Cir. 2010) ...........................................................3

*TZ Manor, LLC v. Daines,*
    815 F. Supp. 2d 726 (S.D.N.Y. 2011) ...........................................5

*Villa v. City of New York,*
    2013 U.S. Dist. LEXIS 49830 (S.D.N.Y. 2013).................................19

*Walczyk v. Rio,*
    496 F.3d 139 (2d Cir. 2007) .........................................................12

*Wertish v. Krueger,*
    433 F.3d 1062 1066-68 (8th Cir. 2006) ...........................................11

*White v. Jackson,*
    865 F.3d 1064 (8th Cir. 2017) .......................................................11

*Wiles v. City of New York,*
    2016 U.S. Dist. LEXIS 148024 (S.D.N.Y. 2016), *aff'd* 724 Fed. App'x 52 (2d
    Cir. 2018).................................................................................16

## Statutes

42 U.S.C. § 1981.................................................................................7

New York Executive Law .....................................................................20

New York Penal Law § 195.05.............................................................14

## Other Authorities

Federal Rules of Civil Procedure Rule 12(b)(6)....................................4, 6

John Adams, *Argument in Defense of the Soldiers in the Boston Massacre Trials* ....................1

203268.1 9/4/2020

## **PRELIMINARY STATEMENT**

This case arises out of an unfortunate incident that took place at 3:00 a.m. on December 18, 2018 in the City of Long Beach. Plaintiff asserts that during a confrontation with the defendant police officers he was subjected to excessive force, false arrest and race-based discrimination. The incident is captured on video and the Complaint is "[b]ased on" that video (ECF Doc. 1 at ¶ 31). The Complaint asserts six federal claims and two pendant state law claims.

The societal backdrop to this case cannot be avoided. There is no disputing the unfortunate reality that highly publicized confrontations between police officers and African American males have caused a deep and tragic polarization in our Country. In a similar vein, it cannot be gainsaid that the combustible element fueling the flames of discord are rash condemnations before facts are fully culled. Viral immediacy has, quite sadly, become the catalyst for prejudgments on both sides. Dispositive here, however, is the bedrock principle of our jurisprudence that facts take precedence over raw vitriol. In this regard, John Adams' sage and prescient observation made more than 200 years ago warrants strict observance in these trying times:

> Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passion, they cannot alter the state of facts and evidence.[1]

The fever-pitched seine of the Complaint's allegations is disproven by video evidence. The Second Circuit has expressly held that such evidence is admissible in the context of a Rule 12(6) motion and controls over contradictory allegations in the Complaint. *See Garcia v. Doe*, 779 F.3d 84 (2d Cir. 2014). The video evidence in this case transforms the issues raised on this motion to matters of law for the Court's resolution.[2]

---

[1] John Adams, *Argument in Defense of the Soldiers in the Boston Massacre Trials*, December 1770.

[2] The video in this case is expressly referenced in paragraph 31 of the Complaint ("Based on surveillance video tape, which captures the accounts of the scene at the time ...") and is otherwise integral to the complaint. *Cf. Leibovitz v.*

The City of Long Beach should be dismissed from this case because Plaintiff has failed to properly plead a *Monell* claim. The Complaint contains no well-pled facts that the City had a custom and policy of violating constitutional rights in connection with arrests. Instead, the Complaint offers only sweeping conclusions that there is a "pattern and practice" of tolerating constitutional violations. Such allegations are insufficient.

The claims against the individual police officers should be dismissed on qualified immunity grounds and because they fail as a matter of law. Again, because the incident in question is captured on video, the determination of qualified immunity is an issue of law for the Court. *Garcia*, 779 F.3d. at 96-97 (reiterating that qualified immunity can be granted in the context of a 12(b)(6) motion to protect officials from expensive and time-consuming discovery); *see also Brown v. City of New York*, 2016 U.S. Dist. LEXIS 53365 (S.D.N.Y. 2016), *aff'd*, 862 F.3d 182 (2d Cir. 2017).

The video recording of the incident reveals a volatile predawn situation resulting in the arrest of one of Plaintiff's friends. While that arrest was being effectuated, Plaintiff approached the arresting police officers. He was repeatedly directed by police officers to clear the area and move to the sidewalk. Plaintiff refused, choosing instead to directly and belligerently challenge the authority of the police officers to ask him to move.

Plaintiff was warned several times, then given a clear and specific final warning to disperse. As part of that warning, a police officer showed Plaintiff handcuffs in attempt to get Plaintiff to reconsider his confrontational posture with the police. Plaintiff still refused to comply with the police officers' directives, again choosing to make it clear that he did not and would not recognize the officers' authority to direct him to move to the sidewalk. On these undisputed facts

---

*City of New York*, 2018 U.S. Dist. LEXIS 34972 at *37-*38 (E.D.N.Y. 2018) (Matsumoto, J.) (declining to consider video that was not referenced in complaint or integral to it).

and in accord with Second Circuit precedent, the police officers had probable cause to arrest Plaintiff and, consequently, Plaintiff's false arrest claim fails as a matter of law. Additionally, the individual defendants are entitled to qualified immunity.

Plaintiff's excessive force claim should also be dismissed. The video of the incident, upon which Plaintiff's Complaint is "based" (ECF Doc. 1 at ¶ 31), reveals that Plaintiff (wearing a silver-colored jacket) confronted the police officers with overt hostility and anger, yelling at them and refusing **repeated** orders to clear the area. Plaintiff then resisted arrest, requiring more than one officer to restrain him. As part of this restraint, as they are trained to do, one arresting officer briefly placed his knee on the side of the resisting Plaintiff's face while the other officers handcuffed him.

Unlike the highly charged incidents of 2020, the incident in question here lasted only a short time and Plaintiff was brought to his feet shortly after being handcuffed. In addressing claims arising out of such circumstances, courts "evaluate the record from the perspective of a reasonable officer on the scene" making "allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). Under the authority cited below, the individual defendants acted in accordance with established case law and should, consequently, be dismissed from this case.

## FACTS

According to his pleading, Plaintiff is a 27-year old African American/Hispanic American male. (ECF Doc. 1 at ¶ 19). On December 18, 2018 at about 3:00 a.m. to 3:30 a.m. in Long Beach, Plaintiff was outside of an establishment known as Wales and Tales, located at 916 W. Beech Street, Long Beach, NY, awaiting a car service (ECF Doc. 1 at ¶ 20).

203268.1 9/4/2020

At that time, Long Beach police officers, including defendants, Walsh, Wiemann and Doe, were responding to a disturbance involving "Caucasian persons" at W. Beech Street and Virginia Avenue (ECF Doc. 1 at ¶ 21). According to Plaintiff, after the "Caucasian persons" were confronted by the police, they were allowed to leave (ECF Doc. 1 at ¶ 22).

Plaintiff contends that immediately upon leaving the Wales and Tales he was approached by police officers (ECF Doc. 1 at ¶ 23). Plaintiff's confrontation with the police officers was recorded. (*See* Affirmation of Howard M. Miller dated September 4, 2020 at Exhibits "A"-"C"). The video, upon which the Complaint is "based" (ECF Doc. 1 at ¶ 31), shows the police officers repeatedly directing Plaintiff to leave the area. Plaintiff refused to do so, belligerently yelling at the officers. After Plaintiff disregarded a final warning, the police officers attempted to arrest him. Plaintiff resisted, causing a brief struggle on the ground. During the struggle, an officer placed his knee on Plaintiff until Plaintiff was handcuffed. Plaintiff was then brought to his feet.

Plaintiff alleges he suffered injuries to his mouth, jaw, teeth, nose, shoulders and back during his arrest (ECF Doc. 1 at ¶ 30). Criminal charges against the Plaintiff were subsequently dropped. This lawsuit ensued.

## STANDARD OF REVIEW

This motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In order "[t]o survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Kajoshaj v. N.Y. City Dep't of Educ.*, 543 F. App'x 11, 13 (2d Cir. 2013) *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011); *see Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."

203268.1 9/4/2020

*Twombly*, 550 U.S. at 555. Rather, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level," and the line "between the factually neutral and the factually suggestive . . . must be crossed to enter the realm of plausible liability." *Id.* at 555, 557 n. 5; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice."); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (same). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "Determining whether a complaint plausibly states a claim for relief is 'a context specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Green v. Hinds*, 2019 U.S. Dist. LEXIS 24305, at *7-*9 (E.D.N.Y. Feb. 14, 2019) *quoting Iqbal*, 556 U.S. at 679. A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Although factual allegations contained in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.* at 664. If, through the factual allegations in a complaint, "a plaintiff 'ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed.'" *TZ Manor, LLC v. Daines*, 815 F. Supp. 2d 726, 734 (S.D.N.Y. 2011) (alteration in original) *quoting Twombly*, 550 U.S. at 570.

### A. Videotape of the Incident is Properly Considered on this Rule 12(b)(6) Motion

In adjudicating a motion made under Rule 12(b)(6) the court may consider documents incorporated by reference in the complaint (*Newman & Schwartz v. Asplundh Tree Expert Co.*,

102 F.3d 660, 662 (2d Cir. 1995)).  Likewise, the Court may consider videotape on this Rule 12(b)(6) motion because the videotape is specifically referenced in the Complaint.  Indeed, Plaintiff contends that his claims are "based" on that video (ECF Doc. 1 at ¶ 31). *See Garcia*, 779 F.3d at 87-88 ("We also consider videos submitted by defendants, which plaintiffs concede are similarly incorporated into the Complaint by reference"); *Stepanian v. City of New York*, 2015 U.S. Dist. LEXIS 122444, at *7 (E.D.N.Y. Sept. 4, 2014) ("Since the video is incorporated into the Complaint, I am allowed to consider it on a motion to dismiss").

## ARGUMENT

### POINT I

### THE POLICE DEPARTMENT IS NOT A PROPER DEFENDANT

Plaintiff asserts claims against the City and the City Police Department.  Because the Police Department is merely an administrative arm of the City and lacks the capacity to sue or be sued, the claims against it must be dismissed.  *See Jones v. Nassau County*, 2019 U.S. Dist. LEXIS 24563, at *8-*9 (E.D.N.Y. Feb. 13, 2019) ("[T]he Hempstead Police Department does not have a legal identity separate and apart from the Village of Hempstead and thus cannot sue or be sued"); *Davis v. Lynbrook Police Dep't.*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing claim against Village Police Department because it cannot sue or be sued).

### POINT II

### PLAINTIFF'S SECTION 1981 CLAIM IS
### SUBSUMED BY HIS SECTION 1983 CLAIMS

Plaintiff's first cause of action alleges race discrimination under 42 U.S.C. § 1981.  This claim must be dismissed given the exclusivity of Section 1983.  In *Jett v. Dallas Independent School District*, 491 U.S. 701, 733 (1999), the Supreme Court held that "the express cause of action for damages created by [42 U.S.C.] § 1983 constitutes the exclusive federal remedy for violation

203268.1 9/4/2020

of the rights guaranteed in § 1981 by state governmental units." The rule of law espoused in *Jett* continues to be applied in the Second Circuit. *See, e.g. Gladwin v. Pozzi*, 403 F. App'x 603, 605 (2d Cir. 2010) (holding that plaintiff's "§ 1981 claims are encompassed by her § 1983 claims"); *Maragh v. Roosevelt Island Operating Corp.*, 2018 U.S. Dist. LEXIS 210481, at *9-*10 (S.D.N.Y. Dec. 12, 2018) ("the Court concludes that [plaintiff's] Section 1981 claims are subsumed by his claims under Section 1983, and therefore must be dismissed"); *Hogan v. County of Lewis*, 929 F. Supp. 2d 130, 150-51 (N.D.N.Y. 2013) ("Plaintiffs' claims against the Lewis County Defendants under § 1981 are barred by the exclusive remedial provision of § 1983"). Count I of the Complaint should be dismissed.

## POINT III

### THE COMPLAINT FAILS TO ADEQUATELY PLEAD A *MONELL* CLAIM

Plaintiff's fifth cause of action attempts to assert a *Monell* claim against the City. The Complaint contains no well-pled facts that the City had a custom and policy of violating constitutional rights in connection with arrests. Instead, the Complaint offers only sweeping conclusions that there is a "pattern and practice" of tolerating constitutional violations (ECF Doc. 1 at ¶ 131). Such allegations are insufficient. *See Duncan v. City of New York*, No. 11-CV-3826, 2012 U.S. Dist. LEXIS 67208, 2012 WL 1672929, at *3 (E.D.N.Y. 2012) (holding that "boilerplate statements" claiming that the city has a custom of making and tolerating false arrests and of using excessive force "are insufficient to state a claim of municipal liability under Monell").

The standard governing the pleading requirements for a *Monell* claim was recently reiterated in *Cooper v. City of New York*, 2019 U.S. Dist. LEXIS 131572, at *30-*31 (E.D.N.Y. Aug. 5, 2019):

> "[A] municipality cannot be held liable under § 1983 on a
> <u>respondeat superior</u> theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S.
> 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Instead,

municipalities are only liable under § 1983 for constitutional deprivations resulting from a governmental policy or custom. *Id.* at 694; *see Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1951, 201 L. Ed. 2d 342 (2018) ("[I]n a § 1983 case[,] a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of 'official municipal policy.' (quoting *Monell*, 436 U.S. at 691)). "Generally, merely asserting, in the absence of factual allegations in support, that a municipal entity has a custom or policy that denies a plaintiff a constitutional right is insufficient to establish a plausible claim." *Salgado v. DuBois*, No. 17-CV-6040 (NSR), 2019 U.S. Dist. LEXIS 53139, 2019 WL 1409808, at *7 (S.D.N.Y. Mar. 28, 2019) (citing *Batista v. Rodriguez*, 702 F.2d 393, 397, 399 (2d Cir. 1983)). A plaintiff may demonstrate that such a policy or custom exists by introducing evidence of one of the following: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policy makers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. *Skates v. Incorporated Village of Freeport*, 265 F. Supp. 3d 222, 235 (E.D.N.Y. 2017) (quoting *Jones v. Bay Shore Union Free Sch. Dist.*, 170 F. Supp. 3d 420, 438 (E.D.N.Y. 2016)).

The Complaint is inadequately limited to allegations regarding Plaintiff's own treatment, which is insufficient. *See Lieberman v. City of Rochester*, 558 Fed. App'x 38 (2d Cir. 2014) (affirming grant of judgment on the pleadings where single incident of plaintiff being "body slammed" by police officer was not sufficient to state *Monell* claim). "There are no facts which plausibly suggest either the existence of a formal policy or a widespread practice." *Oriental v. Vill. of Westbury*, 2019 U.S. Dist. LEXIS 171232, at *9-*10 (E.D.N.Y. Oct. 2, 2019). *See also Schnauder v. Gibens*, 679 F. App'x 8, 10 (2d Cir. 2017) (no de facto policy alleged where "apart from a detailed recounting of his own experiences, [plaintiff's] complaint contains only general conclusory allegations that there was a policy . . ."); *D'Alessandro v. City of N.Y.*, 713 F. App'x 1, 10 (2d Cir. 2017) (finding that Plaintiff "[did] not sufficiently allege a pattern of similar

203268.1 9/4/2020

constitutional violations by the District Attorney's Office" because he "never mentions specific instances of prosecutorial misconduct beyond [his] own case"); *Iacovangelo v. Correctional Med. Care, Inc.*, 624 F. App'x 10, 14 (2d Cir. 2015) (widespread practice not pled where other than the plaintiff, the pleading provides only one additional example of a similar incident); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (noting that "the mere invocation of the 'pattern' or 'plan' will not suffice"); *Nicosia*, 2017 U.S. Dist. LEXIS 92528, at *13 ("two separate incidents alleged by two individuals are insufficient to establish a common practice for *Monell* liability as a matter of law"); *McKeefry v. Town of Bedford*, 2019 U.S. Dist. LEXIS 207874, at *11-*12 (S.D.N.Y. Dec. 2, 2019) ("Plaintiff's opposition claims that the SAC 'clearly shows the pattern, practice or custom employed by Defendants,' . . . but she provides facts only about her case, which is insufficient to show a pattern, practice, policy or custom").

Because there are no allegations in the Complaint that plausibly claim the existence of a policy, custom or practice or that such policy, custom or practice was allegedly undertaken by a final policymaker, Plaintiff's claims against the City should be dismissed. *See Stratakos v. Nassau County*, 2016 U.S. Dist. LEXIS 162714, at *11 (E.D.N.Y. 2016) (granting 12(b)(6) motion where plaintiff's allegations of custom and policy were "clearly tailored to his own unique experience, and does not plausibly support the inference that the same or similar conduct is occurring on such a widespread basis as to imply the constructive acquiescence of senior policymaking officials."); *Duncan v. City of New York*, 2012 U.S. Dist. LEXIS 67208 (E.D.N.Y. 2012) (granting 12(c) motion where plaintiff's allegations of custom and policy of tolerating excessive force and false arrests were conclusory).

203268.1 9/4/2020

## POINT IV

## THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION
## FOR EXCESSIVE FORCE (COUNT III) AND
## FAILURE TO INTERVENE (COUNT VI)

### A. The Video Evidence Demonstrates That There Was No Excessive Force or Failure to Intervene

Police officers are privileged to use reasonable force to effectuate an arrest and to protect themselves from injury. *Graham v. O'Connor,* 490 U.S. 386, 396, 109 S. Ct. 1865 (1989). Dispositive here, "the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Id.* Further, reasonable force does not become unconstitutional merely because it caused the plaintiff serious injury. *Hudson v. McMillian,* 503 U.S. 1, 7, 117 L. Ed. 2d 156, 112 S. Ct. 995 (1992*); Schliewe v. Toro,* 138 Fed. App'x 715 (6th Cir. 2005) (no excessive force notwithstanding that punch by officer broke plaintiff's jaw).

As demonstrated in the videos of the incident (Miller Aff., Exhibits "A"-"C"), the restraint of Plaintiff lasted very briefly, and only until Plaintiff could be handcuffed. Indeed, during the brief course of his restraint, Plaintiff never expressed any discomfort, nor did he indicate that he was in pain or injured. Consequently, the excessive force claim fails as a matter of law. *See Lieberman v. City of Rochester*, 558 F. App'x 38 (2d Cir. 2014) (dismissing excessive force claim notwithstanding Plaintiff's allegations that officer "body slammed" plaintiff to the ground); *Style v. Deputy United States Marshal Adam Mackey*, 2020 U.S. Dist. LEXIS 101989, at *14 (E.D.N.Y. 2020) (dismissing excessive force claim where arresting deputy placed his knee on plaintiff's back only to effectuate the arrest and removed it as soon as plaintiff was brought to his feet); *citing White v. Jackson*, 865 F.3d 1064, 1080 (8th Cir. 2017) ("[I]t was not an unreasonable use of force to push Matthews to the ground and place a knee on his back."); *Nolin v. Isbell*, 207 F.3d 1253,

203268.1 9/4/2020

1257-58 (11th Cir. 2000) (finding the shoving of arrestee against a van, the pressing of a knee against his back and the pushing plaintiff's head into the side of a van during the course of an arrest constituted *de minimis* force.); *see also Wertish v. Krueger*, 433 F.3d 1062 1066-68 (8th Cir. 2006)(rejecting excessive force claim where an officer threw plaintiff to the ground, pinned him down, and placed his weight onto Plaintiff's back before handcuffing him, even though the plaintiff was only passively resistant); *Scott v. District of Columbia*, 101 F.3d 748 (D.C. Cir. 1996) (finding no excessive force where multiple officers knocked plaintiff to the ground and put their knees on his neck, back and lower legs to restrain him).

Because Plaintiff cannot state an excessive force claim, his failure to intervene claim fails as well. *See Salazar v. City of New York*, 2016 U.S. Dist. LEXIS 89774 (S.D.N.Y. 2016); *Pertusiello v. County of Suffolk*, 2019 U.S Dist. LEXIS 141362, at *8 (E.D.N.Y. 2019); *Rolkiewicz v. City of New York*, 2020 U.S. Dist. LEXIS 36966, at *36 (S.D.N.Y. 2020).

### B. The Individual Defendants Are Entitled To Qualified Immunity

Assuming, *arguendo*, Plaintiff can state an excessive force claim, the individual defendants are entitled to qualified immunity. As the authorities cited above make clear, it is not clearly established that police officers may not restrain an arrestee in the manner captured on the video recordings. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear *to a reasonable officer* that his conduct was unlawful in the situation he confronted." *Walczyk v. Rio*, 496 F.3d 139 (2d Cir. 2007) (emphasis in the original) *quoting Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151 (2001) (emphasis added). "Even if the right has been clearly established in certain respects, however, an officer is still entitled to qualified immunity if 'officers of reasonable competence could disagree' on the legality of the action at issue in the particular factual context." *Walczyk*, 496 F. 3d at 154 *quoting Malley v. Briggs*, 475

203268.1 9/4/2020

U.S. 335, 341, 106 S. Ct. 1092 (1986). According to the Supreme Court, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341.

Here, qualified immunity should be granted. The officers were presented with a belligerent individual who refused repeated demands to clear the area. When they attempted to arrest Plaintiff, he and the officers fell to the ground. Plaintiff was only restrained until he could be handcuffed. On similar facts, courts have granted qualified immunity. *See, e.g., Salazar*, 2016 U.S. Dist. LEXIS 89774 at *18-*19 ("Therefore, because it is not 'obvious that no reasonably competent officer would have concluded' that bringing plaintiff to the ground, kneeing her in the back, and twisting her arm to effect arrest in this scenario was an unlawful use of force, *Malley*, 475 U.S. at 341, Officer DeLeon would be entitled to qualified immunity if plaintiff had properly pled an excessive force claim against him.") *citing Lieberman, supra. See also Pesola v. City of New York*, 2017 U.S. Dist. LEXIS 140967, at *8-*9 (S.D.N.Y. 2017) (officer was entitled to qualified immunity when alleged chokehold was used to subdue suspect resisting arrest); *Torres v. Dennis*, 2013 U.S. Dist. LEXIS 83421, at *11-*13 (E.D.N.Y. 2013) (officer entitled to qualified immunity when he punched and struck resisting arrestee on the head with a flashlight); *Hedgpeth v. Rahim*, 893 F.3d 802 (D.C. Cir. 2018) (granting qualified immunity where officer took plaintiff to the ground causing his head to hit a window which resulted in plaintiff suffering a concussion, headaches, vertigo, and other post-concussive symptoms.); *Scott v. District of Columbia*, 101 F.3d 748 (D.C. Cir. 1996) (qualified immunity applied where in effectuating arrest officers "slammed" plaintiff to the ground and used their knees on his neck, back and lower legs while handcuffing him); *Jones v. City of Fort Wayne*, 2017 U.S. Dist. LEXIS 40234, at *17 (N.D. Indiana 2017) (granting qualified immunity: "Mr. Jones further argues that Officer Bonar used excessive force

203268.1 9/4/2020

by placing his knee on Mr. Jones' neck while the officers attempted to place him under arrest. However, the law does not clearly establish that Officer Bonar used excessive force by kneeling on Mr. Jones in the manner to secure him while the officers were placing him in handcuffs."); *Kennedy-Bey v. Metro. Council*, 2016 U.S. Dist. LEXIS 182463 (D. Minn. 2016) (granting qualified immunity where plaintiff alleged that defendants used excessive force in subduing him when the officers placed their knees on Plaintiff's neck and back while Plaintiff was on the floor); *Heitzman v. Engelstad*, 2015 U.S. Dist. LEXIS 14518, at *6 (D. Minn. 2015) (finding that defendant was entitled to *qualified immunity* where he spun plaintiff—who was walking away in noncompliance with the officer's commands—around several time, slammed her against a car hood, and forcefully pushed on plaintiff's neck and back with his arm to hold her down to handcuff her wrist behind her back").

## POINT V

### THE FALSE ARREST, MALICIOUS PROSECUTION AND ABUSE OF PROCESS CLAIMS (COUNT III) SHOULD BE DISMISSED

Plaintiff was charged with disorderly conduct and obstructing governmental administration. Plaintiff's "false arrest claim fails if probable cause supported any one of the … offenses for which he was ultimately charged." *Leibovitz v. Barry*, 2016 U.S. Dist. LEXIS 128231 at *26 (E.D.N.Y. 2016) (Matsumoto, J.) This Court's decisions in *Barry* and *Leibovitz v. City of New York,* 2018 U.S. Dist. LEXIS 34972 (E.D.N.Y. 2018) (Matsumoto, J.) contain an extensive analysis of the elements of these claims.

New York Penal Law § 195.05 defines the crime of obstructing governmental administration in the second degree and provides, in relevant part, that:

> A person is guilty of obstructing governmental administration in the second degree when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official

function, by means of intimidation, physical force or interference, or by means of any independently unlawful act . . . . N.Y. Penal Law § 195.05.

Penal Law Under § 240.20(6)states that "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof. he congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse," The two referenced penal law statutes "overlap to a large degree, because '[a]n officer has probable cause to arrest for obstructing governmental administration where a person refuses to comply with an order from a police officer.'" *Mediavilla v. City of New York*, 259 F. Supp. 3d 82, 97 (S.D.N.Y. 2016) *quoting Marcavage v. City of New York*, 2010 U.S. Dist. LEXIS 107724 (S.D.N.Y. Sept. 29, 2010), *aff'd*, 689 F.3d 98 (2d Cir. 2012).

The videos of the incident demonstrate that there was probable cause to arrest Plaintiff on both charges. Plaintiff was repeatedly directed by police officers to clear the area. Plaintiff was also given a clear and specific final warning to move back to the sidewalk. Plaintiff refused to follow these directives and continued to move forward toward officers attempting to arrest another individual. Consequently, there was probable cause to arrest Plaintiff and, accordingly, his false arrest claim fails as a matter of law. As the Court of Appeals explained in *Crenshaw v. City of Mount Vernon*, 372 F. App'x 202, 205-206 (2d Cir. 2010):

> Officer Guttman asked [plaintiff] to leave the scene, [plaintiff] refused, despite warnings from Guttman that if [plaintiff] did not stop interfering with the officers' questioning of [plaintiff's] niece, he would be arrested. It is also undisputed that a crowd of some thirty people had gathered at the scene by the time of [plaintiff's] arrest. An officer presented with these undisputed facts would have a reasonable belief that there was probable cause to arrest [plaintiff] for disorderly conduct. The New York disorderly conduct statute forbids, among other conduct, "congregat[ing] with other persons in a public place and refus[ing] to comply with a lawful order of the police to disperse" while "recklessly creating a risk" of "public inconvenience, annoyance or alarm." N.Y. Penal Law § 240.20(6). Under this statute a person is guilty of committing disorderly

203268.1 9/4/2020

> conduct if he refuses to obey an officer's order to move, unless the order was "purely arbitrary" and "not calculated in any way to promote the public order." *People v. Galpern,* 259 N.Y. 279, 181 N.E. 572, 574 (N.Y. 1932); *see also Rivera v. City of N.Y.,* 40 A.D.3d 334, 836 N.Y.S.2d 108, 112 (1st Dep't 2007) (failure of protestors to disperse after lawful order to do so, even when protestors asserted right to remain, supported probable cause for disorderly conduct arrest).

*See also Leibovitz,* 2018 U.S. Dist. LEXIS 34972 at \*37-\*38 (E.D.N.Y. 2018) (granting motion to dismiss false arrest claim where plaintiff communicated his intent to disobey order of police offers to move away from a scene); *Owen v. City of Buffalo*, 2020 U.S. Dist. LEXIS 99662 (W.D.N.Y. 2020) (false arrest claim failed where plaintiff refused to comply with order from police officer) *citing Murray v. Ruderfer*, 2017 U.S. Dist. LEXIS 49524 at \*5 (S.D.N.Y. 2017) (collecting cases). *See also Heicklen v. Toala*, 2010 U.S. Dist. LEXIS 14344 (S.D.N.Y. 2010) (same: "The authority to issue dispersal orders continues to play a commonplace and crucial role in police operations, particularly in urban areas.") *quoting City of Chicago v. Morales*, 527 U.S. 41, 108-90, 119 S. Ct. 1849 (1999).

Alternatively, the individual defendants are entitled to qualified immunity on Plaintiff's false arrest claim. *See Crenshaw,* 372 F. App'x at 205 ("Even when probable cause for arrest did not exist, an officer is entitled to qualified immunity if he can show that there was "arguable probable cause" for the arrest"); *Pinto v. City of New York*, 728 Fed. App'x 26 (2d Cir. 2018) ("there is probable cause for failure to disperse if an individual refuses to comply with lawful orders to move to a particular location"); *Wiles v. City of New York*, 2016 U.S. Dist. LEXIS 148024 (S.D.N.Y. 2016), *aff'd* 724 F. App'x 52 (2d Cir. 2018); *Owens, supra.* Indeed, qualified immunity attaches "[e]ven in situations in which an officer reasonably but mistakenly concludes that probable cause exists." *Crenshaw*, 372 F. App'x at 205 *citing Caldarola v. Calabrese,* 298 F.3d 156, 162 (2d Cir. 2002).

203268.1 9/4/2020

Plaintiff's malicious prosecution claim should be dismissed for similar reasons. *See Leibovitz v. Barry*, 2016 U.S. Dist. LEXIS 128231 (E.D.N.Y. 2016) (Matsumoto, J.).

Additionally, because state law false arrest claims (Count VII) and qualified immunity with respect thereto are governed by the same federal standards, Plaintiff's state law claims should be dismissed as well. *See Leibovitz*, 2018 U.S. Dist. LEXIS 34972 at *61-*62.

Plaintiff's abuse of process claim fails because he fails to properly plead that any defendant had an improper collateral objective with respect to Plaintiff's arrest. See *Crespo v. Rivera*, 2018 U.S. Dist. LEXIS 159895, at *37-*38 (S.D.N.Y. 2018). Indeed, "[a]buse of process has three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 63 N.Y.2d 113, 116-117 (1984). A "malicious motive alone is insufficient to give rise to a cause of action to recover for abuse of process." *Place v. Ciccotelli*, 121 A.D.3d 1378, 1380 (3d Dep't 2014). To the contrary, "[i]f [one] uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of process." *Hauser v. Bartow*, 273 N.Y. 370, 374 (1937).

The very "'gist of the action for abuse of process'… is the improper use of process *after it is issued*" (emphasis added). *Curiano*, 63 N.Y.2d at 116; *see also Tenore v. Kantrowitz, Goldhamer & Graifman, P.C.*, 76 A.D.3d 556, 557 (2d Dep't 2010) ("the gist of the tort is "the improper use of process after it is issued" by "an unlawful interference with one's person or property"); *Goldman v. Citicore I, LLC*, 149 A.D.3d 1042 (2d Dep't 2010) (same; "malicious <u>motive</u>, something that cannot, without evidence of an improper <u>purpose</u>, support an abuse-of-process claim" (emphasis in original)). *Azeez v. City of New York*, 2018 U.S. Dist. LEXIS 143211, at *28-*30, 2018 WL 4017580, *aff'd* 790 F. App'x 270 (2d Cir. 2019).

203268.1 9/4/2020

Likewise, "falsity of the allegations and defendant's malicious motive in making them do not, of themselves, give rise to a cause of action for abuse of process (citations omitted)." *Butler v. Ratner,* 210 A.D.2d 691, 693 (3d Dep't 1994), *lv dismissed* 85 NY2d 924 (1994) (dismissing abuse of process claim based upon allegations that "defendant's petition to Family Court falsely and maliciously accused plaintiff of committing acts constituting harassment, menacing, reckless endangerment and assault and was filed for the ulterior and illegitimate purpose of frustrating plaintiff's exercise of [a] constitutional right"); *Ackermann v. Maloney,* 223 A.D.2d 982, 984 (3d Dep't 1996) (holding that "even if plaintiff could establish his claim that the ulterior motive for issuance of the subject traffic ticket was 'to generate a record of police activity, to justify the continuation of particular deputy positions in the annual budget and to generate revenue for the County of Schuyler', because the process was both issued and used for its intended purpose, the complaint fails to state a cause of action for abuse of process"); *Kovler v. Kovler,* 2020 N.Y. Misc. LEXIS 2382, at *2 (Sup. Ct. Kings Co. 2020) (rejecting abuse of process claim based upon plaintiff's allegations that "Defendant made criminal complaints against him with the collateral objective of inflicting economic harm and obtaining a tactical advantage in a pending divorce action").

The Complaint states the conclusory averment that Defendants filed a criminal complaint against Plaintiff to block Plaintiff from accessing the courts and to "satisfy their personal goals and warped sense of power" (ECF Doc. 1 at ¶¶ 116-117). Such allegations are insufficient. *See Leibovitz v. City of New York,* 2015 U.S. Dist. LEXIS 170478, at *42-*43 (S.D.N.Y. 2015) citing *Newton v. City of New York,* 566 F. Supp. 2d 256, 280 (S.D.N.Y. 2008) ("Personal animosity is a collateral motive, not a collateral purpose."); *Jones v. Maples/Trump,* 2002 U.S. Dist. LEXIS 3175 at *8 (S.D.N.Y. 2002); (dismissing claim where plaintiff alleged defendants brought harassment

203268.1 9/4/2020

charges against him to "silence plaintiff's criticism of defendants"); *Curiano v. Suozzi, 63 N.Y.2d* 113, 115-17, 469 N.E.2d 1324, 480 N.Y.S.2d 466, 467-68 (1984) (rejecting abuse of process claim when alleged wrongful objectives were to punish plaintiffs' exercise of free speech and electoral participation).

Likewise, the conclusory allegation that Defendants filed criminal charges against Plaintiff to cover-up their own wrongdoing is insufficient (ECF Doc. 1 at ¶ 118). *See Leibovitz,* 2015 U.S. Dist. LEXIS 170478, at *43-*44 ("In his opposition, the plaintiff asserts that Ms. Gardner "fabricated contempt and harassment charges . . . for the improper 'collateral objective' [of] safeguard[ing] her own employment." (Pl. State Memo. at 71). That allegation is similarly insufficient.") citing *Jovanovic v. City of New York,* 2010 U.S. Dist. LEXIS 144388, at *10 (S.D.N.Y. 2010) (allegation that defendant arrested plaintiff because a colleague – who defendant wanted to impress – ordered him to do so "does not rise to the level of 'protecting one's job,' as there is no evidence that [defendant] believed he could lose his job[] if he did not arrest [plaintiff]"), *aff'd*, 486 F. App'x 149 (2d Cir. 2012).

Further, and in any event, because the individual defendants are entitled to qualified immunity given Plaintiff's repeated refusal to comply directives to clear the area. *Leibovitz*, 2018 U.S. Dist. LEXIS 34972 at *48-*51.

Plaintiff's state law abuse of process claim (Count VIII) fails for the same reasons as his federal claim fails. *See Leibovitz*, 2018 U.S. Dist. LEXIS 34972 at *69.

## POINT VI

## THE RACE DISCRIMINATION CLAIM (COUNT II) SHOULD BE DISMISSED

Plaintiff alleges that he was subjected to excessive force and arrested because of his race (Count II). As threshold matter, the video clearly demonstrates that Plaintiff's confrontation with the police that resulted in his arrest had nothing to do with his race. Rather, Plaintiff disregarded

203268.1 9/4/2020

multiple warnings to clear the area. In any event, the race discrimination claim is conclusory and should therefore be dismissed. *See Mangum v. City of New York*, 2016 U.S. Dist. LEXIS 119213, at *25-*26 (S.D.N.Y. 2016) (dismissing discrimination claim where amended complaint alleged that police officers targeted plaintiff because of his race); *Villa v. City of New York*, 2013 U.S. Dist. LEXIS 49830, at *23-*24 (S.D.N.Y. 2013) (same).

## POINT VII

### THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE FIRST AMENDMENT (COUNT II)

Plaintiff appears to allege that his First Amendment rights were violated regarding his attempts to video the arrest of his friend (ECF Doc. 1 at ¶ 74). This claim fails as a matter of law. Plaintiff was not directed to stop recording. He was only directed to move to the sidewalk. As this Court held in *Leibovitz*, 2018 U.S. Dist. LEXIS 34972, at *26, a request to a citizen to step back from a crime scene while recording is not an infringement of his First Amendment rights. Further, Plaintiff's "clear defiance of a lawful police directive and interference with police activities" is not protected by the First Amendment. *Id.* at *29-*30. Alternatively, under the circumstances depicted in the videos of the incident, the individual defendants are entitled to qualified immunity. *Id.* at *32.

Finally, Plaintiff's claim that he was arrested in retaliation for exercising his First Amendment rights (which is disproven by the video recordings) is subsumed in the above discussion regarding the false arrest claim. *Id.* at *21, n. 12.

## POINT VIII

### PLAINTIFF'S REQUESTS FOR PUNITIVE DAMAGES AGAINST THE CITY MUST BE STRICKEN FROM THE COMPLAINT

Even if the Court determines that any one of Plaintiff's claims should survive this motion, his requests for punitive damages (Complaint at "Prayer for Relief") must be stricken. Indeed,

203268.1 9/4/2020

municipalities are immune from punitive damages except where expressly authorized by statute. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259-263 (1981). In that regard, "Title VII, § 1981, and § 1983 do not provide for damages against municipalities." *Brown v. Baldwin Union Free School Dist.*, 603 F. Supp. 2d 509, 518 (E.D.N.Y. 2009). Likewise, punitive damages are not available under the New York Executive Law. *See Thoreson v. Penthouse Intl.*, 80 N.Y.2d 490 (1992); *Effinger v. State Univ. of N.Y. State College of Optometry*, 1998 U.S. Dist. LEXIS 2289, at *27 (S.D.N.Y. Feb. 26, 1998).

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Complaint in this action be dismissed in its entirety, with prejudice.

Dated:   Garden City, New York
        September 4, 2020

                                  Respectfully submitted,

                                  BOND, SCHOENECK & KING, PLLC

                                By:_____

                                    Howard M. Miller (4538)
                                    Richard S. Finkel (0440)
                                    *Attorneys for Defendants*
                                    1010 Franklin Ave., Ste. 200
                                    Garden City, New York 11530
                                    (516) 267-6300