UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
RICKY JOSHUA BENNY

Plaintiff,

-against-

THE CITY OF LONG BEACH, THE
LONG BEACH POLICE DEPARTMENT,
POLICE OFFICER JOSEPH WIEMANN,
POLICE OFFICER ROCCO WALSH and
OFFICERS JOHN DOES 1-10,

Defendants.
-----------------------------------------------------------------X

**DOCKET NO.: CV-20-1908
(KAM)(ST)**

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT, PURSUANT TO FED. R. CIV. P. 12(b)(6)

**LAW OFFICES OF
FREDERICK K. BREWINGTON**
*Attorneys for Plaintiff*
**556 Peninsula Boulevard
Hempstead, New York 11550
(516) 489-6959**

*OF COUNSEL:*     *FREDERICK K. BREWINGTON
SCOTT A. KORENBAUM*

# TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES .................................................... iii

PRELIMINARY STATEMENT .................................................. 1

STATEMENT OF FACTS ..................................................... 2

ARGUMENT .............................................................. 4

The Complaint adequately alleges claims sounding in excessive force, false arrest, malicious prosecution and fabrication of evidence because Benny did not physically interfere with any member of the department's ability to perform their job, did not push Wiemann and posed no risk to the defendants at the time they body slammed him on the sidewalk ............................................................... 4

A. The standard of review ............................................ 5

B. The Court should not consider defendants' video. ...................... 5

C. The Complaint adequately pleads municipal liability. .................... 7

D. The Complaint adequately alleges excessive force because Benny posed no threat to the defendants and no justification existed to body slam him to the ground. ...................................................... 10

E. The Complaint adequately alleges a fabrication of evidence claim, which defendants fail to address, and probable cause was lacking for Benny's arrest and prosecution. ........................................... 12

1. The Complaint sufficiently establishes a claim sounding in fabrication of evidence. ............................................... 13

2. Probable cause was lacking for Benny's arrest. ................. 14

3. The Complaint sufficiently establishes a claim sounding in malicious prosecution ................................................ 17

4. The Complaint adequately establishes a claim sounding in malicious

           abuse of process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      **5.**      **The Complaint establishes that Walsh did not intervene to stop the arrest and criminal prosecution of Benny.** . . . . . . . . . . . . . . . . . . . . . 20

      **6.**      **Neither Wiemann nor Walsh are entitled to qualified immunity** . . . 21

**F.**      **The Complaint alleges a violation of the Equal Protection Clause.** . . . . . . . 22

**G.**      **The Complaint adequately alleges that Benny's recording of the defendants motivated their use of force and decision to arrest him.** . . . . . . . . . . . . . . . 24

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES
## FEDERAL CASES

**CASE NAME**                                                    **PAGE NO.**

*ACLU v. Alvarez,*
679 F.3d 583 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Adams v. City of New York, 15 CV 6741 (DLC),*
2016 U.S. Dist. LEXIS 37330 (S.D.N.Y. Mar. 22, 2016) . . . . . . . . . . . . . . . . . . . . . . 17

*Amnesty America v. Town of W. Hartford,*
361 F.3d 113 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 12

*Anderson v. Branen,*
17 F.3d 552 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*ATSI Comms., Inc. v. Shaar Fund, Ltd.,*
493 F.3d 87 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Breen v. Garrison,*
169 F.3d 152 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Brown v. City of New York,*
798 F.3d 94 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Cameron v. City of New York,*
598 F.3d 50 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14, 17

*Charles v. City of New York, 12-CV-6180,*
2017 U.S. Dist. LEXIS 17943 (E.D.N.Y. 2017) . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 24

*Coggins v. Buonora,*
776 F.3d 108 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Colon v. City of Rochester,*
419 F. Supp. 3d 586 (W.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cook v. Sheldon,*

41 F.3d 73 (2d Cir. 1994) ........................................... 19

*Crenshaw v. City of Mount Vernon,*
372 Fed. App'x. 202 (2d Cir. 2010) ................................. 16

*DiFolco v. MSNBC Cable L.L.C.,*
  622 F.3d 104 (2d Cir. 2010) ...................................... 5, 7

*Dorsett v. County of Nassau,*
732 F.3d 157 (2d Cir. 2013) ........................................ 23

*Dowling v. City of New York,* 11-CV-4954,
2013 U.S. Dist. LEXIS 142108 (E.D.N.Y. Sep. 30, 2013) ......... 15, 16

*Edrei v. Maguire,*
892 F.3d 525 (2d Cir. 2018) ........................................ 12

*Ferrari v. County of Suffolk,*
790 F. Supp. 2d 34 (E.D.N.Y. 2011) .................................. 9

*Field Day, LLC v. County of Suffolk,*
463 F.3d 167 (2d Cir. 2006) ........................................ 11

*Fields v. City of Philadelphia,*
862 F.3d 353  (3d Cir. 2017) ....................................... 24

*Fordyce v. City of Seattle,*
55 F.3d 436 (9th Cir. 1995) ........................................ 25

*Garcia v. Doe,*
779 F.3d 84 (2d Cir. 2014) .......................................... 6

*Garnett v. Undercover Officer C0039,*
838 F.3d 265 (2d Cir. 2016) ..................................... 13, 14

*Gersbacher v. City of New York,*
134 F. Supp. 3d 711(S.D.N.Y. 2015) .................................. 6

*Gerskovich v. Iocco,* 15 Civ. 7280,
2017 U.S. Dist. LEXIS 11064 (S.D.N.Y. 2017) ....................... 24

*Glik v. Cunniffe,*
655 F.3d 78  (1st Cir. 2011) ....................................... 25

*Goodwine v. AMTRAK*, No. 12–CV–3882,
2014 U.S. Dist. LEXIS 26196(E.D.N.Y. 2014) *report and recommendation adopted*,
2014 U.S. Dist. LEXIS 25499 (E.D.N.Y. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Graham v. Connor*,
490 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Higginbotham v. City of New York*,
105 F. Supp. 3d 369 (S.D.N.Y. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 24

*Hope v. Pelzer*,
536 U.S. 730 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Jean v. County of Nassau*, 14-CV-1322,
2020 U.S. Dist. LEXIS 45279 (E.D.N.Y. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Jenkins v. City of New York*,
388 F. Supp.3d 179 (E.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 21

*Jenkins v. City of New York*,
 478 F.3d 76 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Liebler v. City of Hoboken*, No. 15-8182,
2016 U.S. Dist. LEXIS 95641 (D.N.J. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Lowth v. Town of Cheektowaga*,
82 F.3d 563 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Magnum v. City of New York*, 15 Civ. 8810,
2016 U.S. Dist. LEXIS 119213 (S.D.N.Y. 2016), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*McKenna v. Wright*,
386 F.3d 432 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mickle v. Morin*,
297 F.3d 114 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

*Morrison v. City of New York*, 14-CV-04508,
2019 U.S. Dist. LEXIS 4839 (E.D.N.Y. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Morse v. Fusto*,
804 F.3d 538 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mullenix v. Luna,*
136 S. Ct. 305 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Nnodimele v. Derienzo,*
2016 U.S. Dist. LEXIS 9881 (E.D.N.Y. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Osterhoudt v. City of New York,* 10 CV 3173,
2012 U.S. Dist. LEXIS 139700 (E.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ouwinga v. Benistar, 419 Plan Servs., Inc.,*
694 F.3d 783 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Parada v. Anoka Cty.,*
332 F. Supp. 3d 1229 (D. Minn. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Pehush v. Ashworth,*
757 Fed. Appx. 47 (2d Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Pluma v. City of New York,* 13-CV-2017,
2015 U.S. Dist. LEXIS 48134 (S.D.N.Y. March 31, 2015) . . . . . . . . . . . . . . . . . . . . . 6

*Posr v. Doherty,*
944 F.2d 91 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Rentas v. Ruffin,*
816 F.3d 214 (2d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Reynolds v. Giuliani,
506 F.3d 183 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ricciuti v. N.Y.C. Transit Auth.,*
124 F.3d 123 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 21

*Robinson v. Via,*
821 F.2d 913 (2d Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Shomo v. City of New York,*
579 F.3d 176 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Singer v. Fulton Co. Sheriff,*
63 F.3d 110 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Smith v. City of Cumming,*

212 F.3d 1332 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Stepanian v. City of New York*, 15-CV-1943,
2015 U.S. Dist. LEXIS 122444 (E.D.N.Y. Sep. 4, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Thompson v. Clark*, 14-CV-7349,
2018 U.S. Dist. LEXIS 105225 (E.D.N.Y. Jun. 11, 2018) . . . . . . . . . . . . . . . . . . . . . . . 17

*Tracy v. Freshwater*,
623 F.3d 90  (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Turner v. Driver*,
848 F.3d 678  (5th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Vann v. City of New York.*
72 F.3d 1040  (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Villa v. City of New York*, 11 Civ. 1669,
2013 U.S. Dist. LEXIS 49830 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Wellner v. City of New York*,
393 F. Supp. 3d 388  (S.D.N.Y. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Wilson v. Layne*,
526 U.S. 603  (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## STATE CASES

*People v. Alejandro,*
70 N.Y.2d 133 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*People v. Galpern,*
259 NY 279 (1932 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*People v. Bakolas,*
59 N.Y.2d 51 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*People v. Case,*
42 N.Y.2d 98 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Verponi v. City of New York,* 31 Misc. 3d 1230(A),
2011 N.Y. Misc. LEXIS 2401 (Sup. Ct. Kings County May 19, 2011) . . . . . . . . . . . . . . . . 21

## STATUTES

Penal L. § 195.05 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Penal L. § 240.20(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## PRELIMINARY STATEMENT

On December 8, 2018, at approximately 3:00 a.m., plaintiff, Ricky Joshua Benny, was with his friends, Cedric Coad and Rashawn Weed, outside of Wales and Tales, located in Long Beach, New York. They were waiting for a car service. Without justification, members of the Long Beach Police Department, including defendants Joseph Wiemann and Rocco Walsh, approached Coad and ultimately slammed him to the ground.

Benny began to record the officers' abuse of Coad. Wiemann and Walsh subsequently approached Benny, even though he posed no threat to members of the Department, and ordered him to back up. Benny complied. Benny asked for their names and badge numbers. Instead of providing this information, these defendants picked up Benny and body slammed him to the ground. They continued to use unnecessary force to effectuate Benny's arrest. As a result, Benny suffered multiple injuries to, among other things, his mouth, teeth, and Sphenoid Bone, which included a pterygoid plate fracture.

Benny's nightmare did not end with his arrest. The defendants commenced a baseless prosecution of him. In paperwork prepared by the District Attorney's Office based upon information supplied by Wiemann, and then signed by him, the defendants accused Benny of Obstructing Governmental Administration, Resisting Arrest and Disorderly Conduct. They falsely accused Benny of pushing Wiemann after being told he would be arrested. Fortunately for Benny, the criminal prosecution ended favorably when the accusatory instruments were dismissed and the DA's Office did not appeal the dismissal.

Benny submits this memorandum of law in opposition to the defendants' motion to dismiss the Complaint. This Court should deny the motion because the allegations contained in the Complaint establish the elements of Benny's claims sounding in excessive force, false arrest,

fabrication of evidence, malicious prosecution and abuse of process. This Court should also reject defendants' efforts to introduce video of Benny's arrest because Benny did not incorporate video into the Complaint. And the video does not support defendants' arguments; ironically, it supports Benny's excessive force claim.

## STATEMENT OF FACTS

Benny is an African-American/Hispanic-American man. During the early morning hours of December 8, 2018, he was standing outside of Wales and Tales, in Long Beach, with his friends, Coad and Weed, who are also persons of color. They were waiting for a car service. Comp. at ¶¶ 19-20.

While Benny, Coad and Weed were waiting for their ride, members of the Department were breaking up a fight in the area that involved Caucasians. Those who were involved in this fight were allowed to leave without further incident. Members of the Department then turned their attention to Benny and his friends. The police approached Coad and began to antagonize him. Without justification, the officers slammed him to the ground and placed him under arrest in the middle of the street on Virginia Avenue near the West End Pizzeria. Comp. at ¶¶ 21-23.

Benny was on the opposite side of the intersection while Coad was being arrested by the officers, all of whom were white. Even though he in no way interfered with the police actions, Wiemann, Walsh and other members of the Department told Benny to "back up" onto the sidewalk. Benny complied. He then started recording the police as they abused Coad. He asked for their names and badge numbers. The police did not comply. Instead, they used their flashlights to prevent Benny from recording their colleagues. Comp. at ¶¶ 24-25.

Benny was not interfering with the police officers' arrest of Coad while standing on the

sidewalk recording them. Yet, Wiemann and Walsh approached Benny from behind, picked him up and body slammed him onto the concrete. Not fully clear as to what had happened and who had assaulted him, Benny attempted to get back up from the ground. Wiemann and Walsh once again grabbed Benny and with great force slammed him onto the concrete. This rendered Benny semi or unconscious. Comp. at ¶¶ 26-27.

Wiemann and Walsh arrested Benny. They charged him with Obstruction of Governmental Administration, among other things. Comp. at ¶¶ 33-34. He remained at the precinct for approximately 7-9 hours. Notwithstanding his obvious need for medical attention, he received none until minutes before his release from custody. Comp. at ¶36. Benny sustained multiple injuries including, damage to his mouth, teeth, and a pterygoid plate fracture. He also suffered TMJ injury, extreme trauma to his head, post concussion syndrome, lacerations and cuts, injury to the right side of his face, chipped tooth, injury to his wrists, injury to his shoulders-including but not limited to a complex tear of the posterior labrum both horizontal and obliquely, injury to the adjacent labral capsular junction, a displaced labral flap with the tear extending to th superior labrum where there is a small nondisplaced labral flap, an additional tear along the anterior inferior chondral labral junction and a small region of chondral delamination of the posterior glenoid adjacent to the labral tear of approximately 3mm. Benny underwent no less than two surgeries to address and repair his injuries. Comp. at ¶¶ 36, 38.

Wiemann knew that Benny was lawfully standing on the sidewalk recording his colleagues. Yet, he signed three accusatory instruments that falsely alleged that Benny: (1) "intentionally caused public annoyance and alarm by refusing a lawful order given by uniformed Long Beach Police Officers to disperse the area while he was congregating with several others resulting in an even larger

crowd to assemble in the area;" (2) "intentionally attempt[ing] to prevent uniformed Long Beach police officers from effecting his lawful arrest for disorderly conduct for refusing a lawful order given by police to disperse the area by pushing uniformed Police Officer Joseph Wiemann on his chest with his hands after being told by the officer that he was being placed under arrest;" and (3) "did intentionally attempt to prevent a uniformed Long Beach Police officer from effectuating his lawful arrest for disorderly conduct for refusing a lawful order given by police to disperse the area by pushing uniformed Police Officer Joseph Wiemann on his chest with his hands and attempting to prevent officers from placing him into handcuffs by tensing up his arms and pulling them tightly towards his chest." Comp. at ¶¶ 40-41.

Benny was arraigned in the Long Beach City Court on the false criminal charges on December 10, 2018. He pleaded not guilty. Comp. at ¶ 49. By motion dated March 11, 2019, Benny moved to dismiss the charges against him. On June 27, 2019, Judge Miller granted the motion. He found each of the charges were "legally insufficient." Benny served Notice of Entry of this decision on the People on July 5, 2019. The People did not seek reconsideration, and did not appeal the Court's decision. Comp. at ¶¶ 51, 54-55.

## ARGUMENT

**The Complaint adequately alleges claims sounding in excessive force, false arrest, malicious prosecution and fabrication of evidence because Benny did not physically interfere with any member of the department's ability to perform their job, did not push Wiemann and posed no risk to the defendants at the time they body slammed him on the sidewalk**

Defendants' motion rests primarily on their contention that the video they include establishes that probable cause existed for Benny's arrest and prosecution, and that the force they used was

reasonable under the circumstances.[1] It is improper for the Court to consider the defendants' video because it is not integral to the Complaint. But if the Court disagrees, defendants' motion still lacks merit because critical information that the Court must view favorably to Benny cannot be gleaned from the video, which, viewed favorably to Benny requires the denial of Defendants' motion.

## A. The standard of review.

The standard governing this Court's review of defendants' motion is well-known. This Court must "'accept[] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor.'" *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (citation omitted). The Complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "[T]he Supreme Court has established the following order to be followed in determining whether the pleading is adequate: When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citation and quotations omitted).

## B. The Court should not consider defendants' video.

Defendants claim that the Court should consider video of their arrest of Benny because they claim Benny "contends that his claims are 'based' on that video." Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint ("Defs. Memo") at 6 (citing Comp. at ¶ 31. This is not so. Benny referenced video once in his Complaint. This reference was to "surveillance video," and it was video identified to his counsel during his representation of Mr. Benny during the

---

[1] Defendants' motion to dismiss Benny's *Monell* claims does not rest on the video. Benny demonstrates below that the Complaint adequately establishes municipality liability.

criminal prosecution. It was not the full video taken from the scene by Mr. Benny or his friends. Declaration of Frederick K. Brewington Submitted in Opposition to Defendants' Motion, Pursuant to Fed. R. Civ. Proc. 12(b)(6), to Dismiss the Complaint, dated October 19, 2020, at ¶ 3. While courts can consider evidence outside the pleadings when they are either incorporated into the Complaint or considered integral to it, *see ATSI Comms., Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007), Benny has not offered the video as part of his pleadings. Nor has he incorporated the video following the defendants' introduction of it. *See, e.g., Gersbacher v. City of New York,* 134 F. Supp. 3d 711, 720 (S.D.N.Y. 2015); *Pluma v. City of New York,* 13-CV-2017, 2015 U.S. Dist. LEXIS 48134, at *3 (S.D.N.Y. March 31, 2015).

For these reasons, defendants' reliance upon *Garcia v. Doe,* 779 F.3d 84 (2d Cir. 2014), and *Stepanian v. City of New York,* 15-CV-1943, 2015 U.S. Dist. LEXIS 122444 (E.D.N.Y. Sep. 4, 2014), is misplaced. In *Garcia,* the "Plaintiffs attached five video excerpts and nine still photographs as exhibits to the Second Amended Complaint . . . ," and the defendants submitted videos, which the "plaintiffs concede[d] [were] similarly incorporated into the Complaint by reference. *Id.* at 87-88 & n.2. In *Stepanian,* Judge Gleeson concluded he could consider videotape because the plaintiff had "posted the video on the website YouTube, and included the video's web address in the complaint. See Second Am. Compl. at 16, 18." 2015 U.S. Dist. LEXIS 122444, * 7 & n.4.

The Court should also decline to consider the videos because they are susceptible to differing interpretations. There is no agreement from Plaintiff as to what the videos being offered by Defendants show. Even when the court is allowed to consider extrinsic materials, it nevertheless must do so under the controlling standard of Rule 12(b)(6) – the extrinsic materials must be viewed

in the light most favorable to plaintiff, and all of their reasonable inferences must be drawn in his favor. *DiFolco*, 622 F.3d at 111. *See Ouwinga v. Benistar, 419 Plan Servs., Inc.*, 694 F.3d 783, 796-97 (6th Cir. 2012) (documents integral to complaint may be relied upon in deciding motion to dismiss, but it must also be clear that there are no disputed fact issues regarding relevance of documents; "the district court erred in relying on a document whose validity was in question"); *Liebler v. City of Hoboken*, No. 15-8182, 2016 U.S. Dist. LEXIS 95641, *7 (D.N.J. July 21, 2016) (declining to consider video of the underlying incident at the motion to dismiss stage because "[t]he context of the statements, the identities and tone of voice of the speakers, the decisions that may have preceded or surrounded a meeting, and so on, all present issues of factual interpretation . . . the video is not the sort of uncontroversial document that may itself settle the claims one way or the other."). *See also Cameron v. City of New York*, 598 F.3d 50, 60-61 (2d Cir. 2010) (plaintiff was not entitled to judgment as a matter of law because the time-lapse photographs of plaintiff's arrest did not definitively establish that probable cause was lacking).

The video leaves unanswered a number of questions that, as Benny demonstrates below, bear on the constitutionality of the defendants' actions. For example, it does not capture how far Benny was from the officers who were attempting to effectuate Coad's arrest. Similarly, the video does not depict how far the sidewalk, where Benny's arrest occurred, is from the officers who were attempting to effectuate Coad's arrest. It also does not show what the defendants did after they effectuated the arrest of Mr. Coad, or what caused them to approach and pursue Mr. Benny. It also does not depict whether Coad's arrest was lawful. Brewington Dec. at ¶ 6.

## C.     The Complaint adequately pleads municipal liability.

Defendants claim the Court should dismiss Benny's claims against the City because the

"Complaint only offers sweeping conclusions that there is a 'pattern and practice' of tolerating constitutional violations." Defs. Memo at 7 (citing Comp. at ¶ 131). In advancing this argument, they ignore the Complaint's detailed allegations of police misconduct; misconduct that was permitted to thrive because of the City's non-existent system of supervision and discipline.

A municipality can be held liable under Section 1983 when it, "alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference" to the rights of its citizenry because it failed to act when "the need for more or better supervision to protect against constitutional violations was obvious." *Vann v. City of New York*. 72 F.3d 1040, 1049 (2d Cir. 1995); *see also Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) ("Monell's policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions ... [and this pattern is] sufficiently persistent or widespread as to acquire the force of law."). As Judge Dearie recently recognized, "[t]he municipality's deliberate indifference can be inferred if prior complaints of misconduct are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents, or if the [municipality's] response is so patently inadequate to the task as to amount to deliberate indifference." *Jenkins v. City of New York*, 388 F. Supp.3d 179, 188 (E.D.N.Y. 2019) (citations and quotations omitted).

Benny's Complaint contains seven detailed paragraphs (Comp. at ¶¶ 131-37) spanning three pages that allege how time and again the City has ignored systemic acts of police brutality, particularly regarding minority members residing in the community commonly known as North Park. Comp. at ¶ 132. The Complaint details how, despite its notice of police brutality, the City does not have a system in place that addresses the brutality perpetrated by the Department upon its citizens,

and does not have a disciplinary system in place to address this misconduct. The Complaint identifies specific flaws in the City's supervisory and disciplinary systems, including:

> a. Preparing reports regarding investigations of beatings and abuse incidents as routine point-by-point justifications of police officer actions, regardless of whether such actions are justified;
>
> b. Police officers investigating beatings systemically fail to credit testimony by non-police officer witnesses, and uncritically rely on reports by police officers involved in the incident;
>
> c. Police officers investigating beatings fail to include in their reports relevant factual information which would tend to contradict the statements of the police officers involved;
>
> d. Supervisory police officers at times issue public statements exonerating police officers for excessive use of force, improper beatings, and use of unnecessary and excessive force before the investigation of the incident by the police department has been completed;
>
> e. Reports in brutality cases are not reviewed for accuracy by supervisory officers. Conclusions are frequently permitted to be drawn on the basis of clearly incorrect or contradictory information.

Comp. at ¶ 137. Benny need not do anything more at the motion to dismiss stage. *See Colon v. City of Rochester*, 419 F. Supp. 3d 586, 605-06 (W.D.N.Y. 2019); *Osterhoudt v. City of New York*, 10 CV 3173, 2012 U.S. Dist. LEXIS 139700, at *4-6 (E.D.N.Y. Sep. 27, 2012) (Dearie, J.). This is particularly so because "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage." *Ferrari v. County of Suffolk*, 790 F. Supp. 2d 34, 45 (E.D.N.Y. 2011) (quoting *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 130 n. 10 (2d Cir. 2004)). *See Jenkins*, 388 F. Supp.3d at 186-88 (denying the City of New York's motion for summary judgment because "[w]hile it is true that none of the allegations against Zambrano's use of force were considered substantiated, it is hard to appreciate

how the City considers itself blameless given the impressive history of complaints against Zambrano and the 'uninterested and superficial' investigations that followed.").

**D.**     **The Complaint adequately alleges excessive force because Benny posed no threat to the defendants and no justification existed to body slam him to the ground.**

Defendants argue that Benny's excessive force claim fails because the video they submit establishes that "the restraint of Plaintiff lasted very briefly, and only until Plaintiff could be handcuffed. Indeed, during the brief course of his restraint, Plaintiff never expressed any discomfort, nor did he indicate that he was in pain or injured." Defs. Memo at 10. This argument is belied by the allegations of the Complaint.

Courts apply the Fourth Amendment's "'reasonableness' standard" in assessing whether force is excessive. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Courts look to the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Here, the Complaint makes clear that Benny was not arrested for a crime of violence. *See Brown v. City of New York*, 798 F.3d 94, 102 (2d Cir. 2015). In fact, Benny committed no crime at all. Comp. at ¶¶ 19-35. Similarly, Benny posed no risk to the defendants and did not attempt to resist or evade arrest. *Mickle v. Morin*, 297 F.3d 114, 121 (2d Cir. 2002). Yet, without provocation, Wiemann and Walsh "approached Plaintiff from behind and picked Plaintiff up and body slammed him onto the concrete. . . . Not fully clear as to what had happened and who had assaulted him, Plaintiff then immediately attempted to get back up from the ground." Wiemann and Walsh then "again grabbed Plaintiff and with great force and with an intent to cause serious and permanent

injury body slammed him onto the concrete causing the Plaintiff to strike his face, head and upper torso against the concrete and rendering him semi or unconscious." Comp. at ¶¶ 26-27. Time and again the Second Circuit has recognized entirely gratuitous force against an unresisting arrestee by an officer is unreasonable and therefore excessive within the meaning of the Fourth Amendment. *See, e.g.*, *Tracy v. Freshwater*, 623 F.3d 90, 99 & n.5 (2d Cir. 2010); *Amnesty America v. Town of W. Hartford*, 361 F.3d 113, 123-24 (2d Cir. 2004); *Mickle*, 297 F.3d at 121-23; *Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999); *Robinson v. Via*, 821 F.2d 913, 923-24 (2d Cir. 1987).

For these same reasons the defendants are not entitled to qualified immunity. Affording qualified immunity at the pre-discovery stage is strongly disfavored. *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004). A defendant asserting a qualified immunity defense on a motion to dismiss "faces a formidable hurdle . . . and is usually not successful." *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191-92 (2d Cir. 2006). To succeed at this stage of the litigation, an officer's entitlement to qualified immunity must be "based [solely] on the facts appearing on the face of the complaint." *McKenna*, 386 F.3d at 436.

"Qualified immunity protects public officials performing discretionary functions from personal liability in a civil suit for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. . . . Whether qualified immunity applies turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken. . . . [A] right is clearly established if it would be clear to a reasonable [public official] that his conduct was unlawful in the situation he confronted." *Morse v. Fusto*, 804 F.3d 538, 546 (2d Cir. 2015).

"A clearly established right is one that is sufficiently clear that every reasonable official

would have understood that what he is doing violates that right." *Mullenix v. Luna,* 136 S. Ct. 305, 308 (2015). A case on all fours is not required to place officers on notice. Cases with fundamentally or materially similar facts are not required so long as the officer had "fair warning" that the conduct in which he/she engaged was unconstitutional. The law can be clearly established even when "the very action in question" has not "previously been held unlawful" so long as the unlawfulness of the actions was "apparent" "in light of pre-existing law." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citations omitted). In *Edrei v. Maguire*, 892 F.3d 525 (2d Cir. 2018), this Court confirmed officers do not lack notice that their actions were unconstitutional simply because no other case addressed their actions. Recognizing that the "[q]ualified immunity doctrine is not so stingy[,]" *id.* at 540, the *Edrei* Court concluded that it was not necessary for the Supreme Court or the Second Circuit to have squarely addressed the issue to give a reasonable officer fair notice because certain Fourth Amendment principles governing the use of force apply with obvious clarity even in the absence of a prior holding. *Id.* at 541-43 (citation omitted). Thus, qualified immunity is unavailable when "a consensus of cases of persuasive authority [exist] such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999).

Here, as of December 8, 2018, the law was clearly established that the use of entirely gratuitous force against an unresisting arrestee by an officer is unreasonable, and therefore, excessive within the meaning of the Fourth Amendment. *Tracy*, 623 F.3d at 99 & n.5; *Amnesty America*, 361 F.3d at 123-24; *Mickle*, 297 F3d at 121-23; *Breen*, 169 F.3d at 153; *Robinson*, 821 F.2d at 923-24.

**E.    The Complaint adequately alleges a fabrication of evidence claim, which defendants fail to address, and probable cause was lacking for Benny's arrest and prosecution.**

Defendants claim that probable cause existed to arrest and prosecute plaintiff for the offenses

of Obstructing Governmental Administration (Penal L. § 195.05) and Disorderly Conduct (Penal L. § 240.20(6)) because Benny "was repeatedly directed by police officers to clear the area. Plaintiff was also given a clear and specific final warning to move back to the sidewalk. Plaintiff refused to follow these directives and continued to move forward toward officers attempting to arrest another individual." Defs. Memo at 14. Again, defendants ignore the allegations in the Complaint. Defendants do not move to dismiss plaintiff's fabrication of evidence claim.

### 1. The Complaint sufficiently establishes a claim sounding in fabrication of evidence.

Benny brings a fabrication of evidence claim. Comp. at ¶¶ 1, 2, 5, 18, 32, 41, 101, 108, 146, 147. Defendants do not move to dismiss this claim. Any effort to do so would be meritless.

To prevail on a fabrication of evidence claim, the plaintiff must establish that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)). The existence of probable cause to arrest (lacking in this case) does not defeat a fabrication of evidence claim. *Garnett*, 838 F.3d at 277-78. Similarly, it does not matter whether the fabricated evidence is admissible at trial – although it would be as Wiemann's sworn statements are based upon his claimed first hand observations. *Nnodimele v. Derienzo*, 2016 U.S. Dist. LEXIS 9881, at *37-38 (E.D.N.Y. Jan. 27, 2016) ("this conclusion would make little sense if *Ricciuti* required a showing that the alleged fabrication be likely to actually influence a jury's decision. Instead, *Ricciuti* is more naturally read as requiring that the fabrication be material—that is, of such a character that it would likely influence

a jury's decision if a jury were to consider it.")

Here, the Complaint adequately alleges each element. Wiemann is an investigating official. He signed three false accusatory instruments; two falsely alleged Benny of physically resisting the defendants' efforts to arrest him. Comp. at ¶¶ 39-41. They were material as they represented an element of each offense. *Garnett*, 838 F.3d at 275-76; *Rentas v. Ruffin*, 816 F.3d 214, 222-23 (2d Cir. 2016). And Benny suffered a deprivation of liberty as a result of Wiemann's false allegations. Comp. at ¶¶ 37, 56. *Wellner v. City of New York*, 393 F. Supp. 3d 388, 395-96 (S.D.N.Y. 2019).

## 2. Probable cause was lacking for Benny's arrest.

Relying upon the video they submit, defendants claim that probable cause existed to arrest Benny for Obstructing Governmental Administration in the Second Degree and Disorderly Conduct. Defs. Memo at 13-15. In *Cameron v. City of New York*, 598 F.3d 50 (2d Cir. 2010), the Second Circuit made clear that "obstructing governmental administration [OGA] has four elements: (1) prevention or attempt to prevent (2) a public servant from performing (3) an official function (4) by means of intimidation, force or interference. . . . In New York, however, for an arrest to be 'an official function,' it must be lawful. . . . Appellees essentially argue that any arrest, lawful or otherwise, by a police officer is an 'official function.' But this proposition finds no support in New York case law." *Id.* at 68.

Against this legal backdrop, defendants' arguments fail for two reasons. First, the Complaint makes clear that the arrest of Coad was unlawful. Comp. at ¶¶ 21-23. Thus, the defendants were not involved in an official function. *Id.* ("if Ramos and Rivera's arrest of Cameron was not lawful--e.g., if they knew that they did not possess probable cause to arrest her for any crime--then they could not have probable cause to arrest Higgenbottom for obstructing governmental

-14-

administration.").[2] Second, OGA requires a defendant to interfere with an "official function" by means of "physical force or interference." N.Y. Penal L. § 195.05. The word "physical" modifies both "force" and "interference." *People v. Case*, 42 N.Y.2d 98, 101 (1977). And "mere words alone do not constitute 'physical force or interference' such as to support the charge of obstructing governmental administration." *Id.* at 102. Here, the Complaint makes clear that Benny did not physically interfere with the defendants' or any other member of the Department's ability to effectuate the unlawful arrest of Coad. As such, probable cause did not exist to arrest Benny for OGA. *Charles v. City of New York*, 12-CV-6180, 2017 U.S. Dist. LEXIS 17943, at *44-51.

Probable cause was also lacking to arrest Benny for Disorderly Conduct. Defendants contend that Benny violated subdivision 6. The statute provides, in relevant part,

> A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof; (6) He congregates with other persons in a public place and refuses to comply with a **lawful order** of the police to disperse.

N.Y. Penal L. § 240.20(6) (emphasis added). Numerous reasons exist to deny defendants' motion.

First, as noted, Defendants' order was not lawful. OGA and Section 240.20(6) substantially overlap, as defendants note. Defs. Memo at 14. "Failing to obey a police order, in and of itself, does not constitute a circumstance that gives rise to probable cause for an arrest for obstructing government administration." *Dowling v. City of New York*, 11-CV-4954, 2013 U.S. Dist. LEXIS 142108, at *12 (E.D.N.Y. Sep. 30, 2013).

*Dowling* is instructive. In *Dowling*, Judge Garaufis recognized that an arresting officer must have probable cause to believe that the defendant's refusal to comply with an officer's order was

---

[2] Video sheds no light on this issue.

done in conjunction with his interference with the lawful official action. *Id.* at *11-14. Here, the Complaint alleges that Benny was not near Coad's arrest when the defendants told him to get on the sidewalk, that he complied with the defendants order, and that he was standing on the sidewalk recording the officers at the time of his arrest. Comp. at ¶¶ 24-26. The Complaint also establishes that Wiemann and Walsh knew that Benny was not interfering in their colleagues efforts to arrest Coad. Comp. at ¶¶ 29-32.

Defendants also ignore that subdivision 6 of the Disorderly Conduct statute requires that there be some "evidence of actual or threatened public harm. *People v. Bakolas*, 59 N.Y.2d 51, 53-54. Section 240.20(6) requires more then evidence of a failure to disperse when directed by law enforcement. The failure to disperse must be done with the intent to cause public inconvenience. *Charles*, 2017 US. Dist. LEXIS 17943, *54-55.

Defendants' argument also fails because there is no evidence that Benny "congregate[d] with other persons in a public place with the intent to cause public inconvenience, annoyance or alarm. . . ." By defendants' telling, Benny was a lone wolf. "A group can disperse; an individual cannot." *Goodwine v. AMTRAK*, No. 12–CV–3882, 2014 U.S. Dist. LEXIS 26196, at *22 (E.D.N.Y. Feb. 5, 2014) (holding that there was no violation of §240.20(6) where the officer instructed the plaintiff alone to leave the area, rather than instructing the congregation of which the plaintiff was allegedly a member to disperse), *report and recommendation adopted*, 2014 U.S. Dist. LEXIS 25499 (E.D.N.Y. Feb. 27 2014). *See Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 373 (S.D.N.Y. 2015) ("Because the defendants' order was directed at [plaintiff] alone, it could not be an order to disperse.").

For all of these reasons, defendants' reliance on *Crenshaw v. City of Mount Vernon*, 372 Fed.

App'x. 202 (2d Cir. 2010), is misplaced. And as Judge Cote recognized in *Adams v. City of New York*, 15 CV 6741 (DLC), 2016 U.S. Dist. LEXIS 37330, at *8-9 (S.D.N.Y. Mar. 22, 2016), it is unclear whether *People v. Galpern* remains good law.

Benny was also arrested and charged with Resisting Arrest. N.Y. Penal L. § 205.30. Brewington Dec. at Exh. 1. Defendants present no argument regarding the existence of probable cause to arrest for Resisting Arrest for good reason. The Complaint makes clear Benny did not resist arrest. Comp. at ¶ 40.[3] And Benny could not resist an unlawful arrest. *Thompson v. Clark*, 14-CV-7349, 2018 U.S. Dist. LEXIS 105225, at *37-38 (E.D.N.Y. Jun. 11, 2018) (citing *People v. Alejandro*, 70 N.Y.2d 133, 135 (1987)).

### 3. The Complaint sufficiently establishes a claim sounding in malicious prosecution

The elements of a claim for malicious prosecution are well known. "Malicious prosecution occurs when (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiff's favor." *Cameron*, 598 F.3d at 63. Benny must also establish that he suffered a post-arraignment deprivation of liberty. *Singer v. Fulton Co. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995). Defendants contend that Benny's "malicious prosecution claim should be dismissed" because probable cause existed for Benny's arrest. Defs. Memo at 16. This is the substance of their argument. Benny demonstrates above why this argument fails.

This Court should deny defendants' motion even if it finds probable cause existed to arrest for Disorderly Conduct, or that the defendants are entitled to qualified immunity, because probable

---

[3] One would think the defendants would present this argument if, in their telling, the video would support it.

cause was so utterly lacking to arrest Benny for OGA and Resisting Arrest. In *Posr v. Doherty*, 944 F.2d 91 (2d Cir. 1991), the Second Circuit made clear that law enforcement officers cannot stack bogus charges upon lesser charges. As the Court noted,

> As disorderly conduct is a lesser charge than resisting arrest and assaulting an officer, . . . , we should not allow a finding of probable cause on this charge to foreclose a malicious prosecution cause of action on charges requiring different, and more culpable, behavior. If the rule were the one followed by the district court, an officer with probable cause as to a lesser offense could tack on more serious, unfounded charges which would support a high bail or a lengthy detention, knowing that the probable cause on the lesser offense would insulate him from liability for malicious prosecution on the other offenses.

*Id.* at 100. In other words, this Court must determine whether probable cause existed to arrest for each charge. *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996).

Contrary to defendants' argument, Defs. Memo at 14, Benny's arrest for OGA and Disorderly Conduct did not arise from the same nucleus of facts. According to the accusatory instrument Wiemann signed, Benny was guilty of OGA, an A-misdemeanor, because he did "intentionally attempt to prevent uniformed Long Beach Police officers from effecting his lawful arrest for disorderly conduct for refusing a lawful order given by police to disperse the area by pushing uniformed Police Officer Joseph Wiemann on his chest with his hands after being told by the officer that he was being placed under arrest."[4] In contrast, Benny was guilty of Disorderly Conduct, a Violation, because he "intentionally caused public annoyance and alarm by refusing a lawful order given by uniformed Long Beach Police Officers to disperse the area while he was congregating with several others resulting in an even larger crowd to assemble in the area." Brewington Dec. at Exh.

---

[4] Wiemann alleged in the accusatory instruments that Benny's act of pushing him constituted the crimes of OGA and Resisting Arrest. Brewington Dec. at Exh. 1.

1. Given the more serious nature of the OGA and Resisting Arrest charges, which the Complaint makes clear did not occur, the Court should deny defendants' motion to dismiss his malicious prosecution claim. *Morrison v. City of New York*, 14-CV-04508, 2019 U.S. Dist. LEXIS 4839, at *18-19 (E.D.N.Y. Jan. 10, 2019).

### 4. The Complaint adequately establishes a claim sounding in malicious abuse of process.

In *Cook v. Sheldon*, 41 F.3d 73 (2d Cir. 1994), the Second Circuit articulated the elements of the malicious abuse of process claim. According to the Second Circuit, "a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Id.* at 80.

Here, the Complaint adequately alleges each of these elements. Wiemann employed regular process by causing Benny to be arraigned, he did so maliciously, and for the collateral objective of preventing Benny from recording the misconduct of his colleagues in the Department. This suffices for purposes of withstanding a motion to dismiss. *Id.*

The Complaint alleges addition evidence of collateral objectives. For example, defendants "intended to mask the clear violations suffered by Mr. Benny at the hands of the Defendant Officers"; "to block Plaintiff from access to the Court and seeking justice against them for their wrongful acts"; "to satisfy their personal attempt to satisfy their personal goals and their own warped sense of power". They also sought to "ensure that Plaintiff would be convicted and would not be able to pursue his rights in court for his false arrest and unwarranted beating. Defendants also

intended to cripple Plaintiff financially by forcing him into submitting to court and legal fees, payments, and court imposed fees/fines - not because they knew or believed that Plaintiff committed any criminal acts" and "shield themselves from liability from the wrongful actions committed against Plaintiff." Comp. at ¶ ¶ 42, 116, 117, 118 and 124 These allegations also suffice for purposes of withstanding a motion to dismiss, as each of these allegations were "initiated and used to the detriment of Plaintiffs solely for a purpose that was/is outside the legitimate ends of the legal process." Comp. at ¶120. *Id.*

> **5.** **The Complaint establishes that Walsh did not intervene to stop the arrest and criminal prosecution of Benny**.

Defendants contend that Benny cannot impose liability on a failure to intervene theory regarding his excessive force claim because he cannot state an excessive force claim. Defs. Memo at 11. They are correct, but for the wrong reason. Benny demonstrates above that Wiemann and Walsh used excessive force. That is the only reason he cannot proceed under a failure to intervene theory of liability on that claim. But he can proceed on a failure to intervene theory on his false arrest, malicious prosecution and fabrication of evidence claims.

In *Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994), the Second Circuit articulated the elements of a failure to intervene claim:

> It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. . . . An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, . . ; (2) that a citizen has been unjustifiably arrested, . . ; or (3) that any constitutional violation has been committed by a law enforcement official. . . . In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm

> from occurring. . . . Whether an officer had sufficient time to
> intercede or was capable of preventing the harm being caused by
> another officer is an issue of fact for the jury unless, considering all
> the evidence, a reasonable jury could not possibly conclude
> otherwise.

*Anderson*, 17 F.3d 557. Here, the Complaint makes clear that Walsh knew that no basis existed to

arrest and prosecute Benny, but he allowed both to occur. Comp. at ¶¶ 35-36, 48, 77. Nothing more

need be pleaded at this juncture to establish a claim sounding in failure to intervene. *See Ricciuti*,

124 F.3d at 129.

**6.      Neither Wiemann nor Walsh are entitled to qualified immunity**.

Defendants are also not entitled to qualified immunity. The allegations in the Complaint

make clear that probable cause was clearly lacking to arrest Benny for OGA or Disorderly Conduct.

It is beyond cavil that the right not to be arrested except upon a finding of probable cause for each

and every element of the offense was clearly established as of December 8, 2018. *Jenkins v. City*

*of New York*, 478 F.3d 76, 87 (2d Cir. 2007). Similarly, the right to be free from a malicious

prosecution and the use of fabricated evidence was clearly established. *Coggins v. Buonora*, 776

F.3d 108, 114 (2d Cir. 2015). As was the right to be free from malicious abuse of process. *Cook*,

*supra*.

Defendants also argue that Benny's state law claims sounding in false arrest, and presumably

malicious prosecution, should be dismissed on the grounds of qualified immunity because they are

governed by the same federal standards. Defs. Memo at 16. Benny demonstrates above that the

defendants are not entitled to qualified immunity under federal law. Even if the Court disagrees,

Benny's claims against the City are viable under the doctrine of *respondeat superior*. *Verponi v.*

*City of New York*, 31 Misc. 3d 1230(A), 2011 N.Y. Misc. LEXIS 2401, at *30-31 (Sup. Ct. Kings

County May 19, 2011) ("while the individual police officers [were] entitled to immunity, the Defendant City of New York is not immune from such state law claims, and may still be liable for the police officers' actions pursuant to doctrine of respondeat superior."). *See Pehush v. Ashworth*, 757 Fed. Appx. 47, 52 (2d Cir. Dec. 4, 2018) (recognizing the split of authority on the issue of whether an entitlement to qualified immunity under state law permits claims to proceed against the municipality).

**F.      The Complaint alleges a violation of the Equal Protection Clause.**

Defendants contend that Benny's Equal Protection claim should be dismissed for two distinct reasons. Once again relying on the video they submit, they first claim that "the video clearly demonstrates that Plaintiff's confrontation with the police that resulted in his arrest had nothing to do with his race. Rather, Plaintiff disregarded multiple warnings to clear the event." Next, they contend that "the race discrimination claim is conclusory and should therefore be dismissed." Defs. Memo at 18-19 (citations omitted). Benny demonstrates above why defendants' reliance upon video is misplaced. Their contention regarding the conclusory nature of the Complaint ignores its content.

Benny can successfully plead an equal protection claim by alleging that "a government actor intentionally discriminated against him on the basis of his race. . . . Discriminatory intent requires proof that a discriminatory purpose has been a motivating factor in the challenged action. . . . Moreover, allegations of discrimination under the Equal Protection Clause 'require that intentional discrimination be alleged in a non-conclusory fashion." *Jean v. County of Nassau*, 14-CV-1322, 2020 U.S. Dist. LEXIS 45279, at *31 (E.D.N.Y. Mar. 16, 2020) (quotations and citations omitted). Here, the Complaint contains concrete examples of differential treatment based upon plaintiff's race. It discusses how the defendants were already in the vicinity responding to a fight involving

Caucasians when Benny and his friends left Wales and Tales to go home. Comp. at ¶ 21. It details how the Caucasians were confronted by police while they were actually engaged in the fight, and yet were allowed to leave without consequences. Comp. at ¶ 22. It details how the defendants and members of the Department arrested Coad, who had done nothing wrong, and physically assaulted him, "while the Caucasian men engaged in a violent street fight were allowed to go free." Comp. at ¶ 23. And the Complaint details how the defendants turned their attention to Benny, who had done nothing wrong. That is enough to withstand a motion to dismiss. *Parada v. Anoka Cty.*, 332 F. Supp. 3d 1229, 1244-45 (D. Minn. 2018).

Given the Complaint's fact laden allegations, defendants' reliance upon *Magnum v. City of New York*, 15 Civ. 8810, 2016 U.S. Dist. LEXIS 119213 (S.D.N.Y. 2016), and *Villa v. City of New York*, 11 Civ. 1669, 2013 U.S. Dist. LEXIS 49830 (S.D.N.Y. 2013), is misplaced. In *Magnum* and *Villa*, the plaintiff failed to allege anything more than conclusory allegations. *Magnum*, 2016 U.S. Dist. LEXIS at *25-26 ("The only allegation even referencing such a classification is the allegation that Officers Arslanbeck and Porras, in stopping Mangum, targeted him on account of his race."); *Villa*, 2013 U.S. Dist. LEXIS at *23-24 ("the Amended Complaint fails to proffer any facts showing that Defendants arrested or handcuffed Plaintiff because of his race.").

### G. The Complaint adequately alleges that Benny's recording of the defendants motivated their use of force and decision to arrest him.

Benny must establish the following elements to prevail on his First Amendment retaliation claim: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (citation omitted).

As Judge Castel recognized in *Higginbotham v. City of New York*, 105 F.Supp.3d at 378, "[w]hile videotaping an event is not itself expressive activity, it is an essential step towards an expressive activity, at least when performed by a professional journalist who intends, at the time of recording, to disseminate the product of his work[,]" which brings it into the sphere of activity protected by the First Amendment.

Defendants do not contend that Benny was not exercising his First Amendment rights while videotaping them. They argue that his claim fails because he was not directed to stop videotaping; rather, he was told to videotape from the sidewalk. Defs. Memo at 19. Defendants misunderstand Benny's First Amendment claim. Reading the Complaint liberally, as this Court must, it establishes that Benny's recording of the defendants' efforts to arrest Coad, and his continuing to do so when the defendants unlawfully directed him to stop recording, motivated his arrest and their use of excessive force. Comp. at ¶¶ 24-27. And the Complaint also provides evidence of hostility to Benny's recording: "Plaintiff began to record the actions of the Police as they abused Mr. Coad and asked them for their names and badge numbers. The Police refused to provide Plaintiff their names or badge numbers, and instead began to shine their flashlights at Plaintiff's phone in an attempt to glare out the video recording that Plaintiff was conducting." Comp. at ¶ 25. This establishes a violation of the First Amendment. *Gerskovich v. Iocco*, 15 Civ. 7280, 2017 U.S. Dist. LEXIS 110640, at *19-20 (S.D.N.Y. Jul. 17, 2017). *See Charles*, 2017 U.S. Dist. LEXIS 17943, at *79-81.

Nor are defendants entitled to qualified immunity. While the Second Circuit has yet to address the issue, every Circuit Court has concluded that the public has the right to film police activity subject to reasonable time, place and manner restrictions. *See Fields v. City of Philadelphia*, 862 F.3d 353, 359 (3d Cir. 2017); *Turner v. Driver*, 848 F.3d 678, 687-88 (5th Cir. 2017); *ACLU v.*

*Alvarez*, 679 F.3d 583, 595–96 (7th Cir. 2012); *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011);

*Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); *see also Fordyce v. City of Seattle*,

55 F.3d 436, 439 (9th Cir. 1995). Accordingly, defendants are not entitled to qualified immunity

with respect to Benny's First Amendment claim.

## **CONCLUSION**

The Complaint paints a brutal picture of police conduct gone awry. The defendants arrested

Benny to prevent him from filming their unjustified arrest of Coad, and caused him serious injuries

in the process. Wiemann than falsely accused Benny of physically resisting his efforts to arrest him.

Because the Complaint adequately alleges liability against each of them, the defendants' motion to

dismiss should be denied in its entirety.

Dated: Hempstead, New York
      October 19, 2020

                        LAW OFFICES OF
                        FREDERICK K. BREWINGTON

By:                           
                        FREDERICK K. BREWINGTON
                        *Attorneys for Plaintiff*
                        556 Peninsula Boulevard
                        Hempstead, New York 11550
                        (516) 489-6959

SCOTT A. KORENBAUM,
    of Counsel