UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
RICKY JOSHUA BENNY,

                Plaintiff,

      -against-

THE CITY OF LONG BEACH, THE LONG
BEACH POLICE DEPARTMENT, POLICE
OFFICER JOSEPH WIEMANN, POLICE
OFFICER ROCCO WALSH and OFFICERS
JOHN DOES 1-10,

                Defendants.
---------------------------------X

<u>MEMORANDUM AND ORDER</u>

20-CV-1908 (KAM)

MATSUMOTO, United States District Judge:

        On April 24, 2020, Ricky Joshua Benny ("Plaintiff"),
filed a complaint against the City of Long Beach ("City"), the
Long Beach Police Department ("LBPD"), and individual Defendants
Police Officer Joseph Wiemann, Police Officer Rocco Walsh, and
Officers John Does 1-10 (collectively, "Defendants") pursuant to
42 U.S.C. §§ 1981, 1983, the First, Fourth, Fifth, Sixth, and
Fourteenth Amendments, and New York law.  (ECF No. 1, Complaint
("Compl.").)  Plaintiff alleged claims of racial discrimination,
deprivation of rights, privileges and immunities under the
First, Fourth, Fifth, Sixth, and Fourteenth Amendments, false
arrest, malicious prosecution, fabrication of evidence, failure
to intervene, abuse of process, a pattern and practice of abuse
of force and authority, and excessive use of force.  (*See id.* ¶¶
15, 18, 23, 32, 36, 104.)

1

Before the Court is Defendants' motion to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Defendants' motion to dismiss is GRANTED in part and DENIED in part, with leave to move for summary judgment.

**BACKGROUND**

**I.  Factual Background**[1]

Except as noted, the Court presumes the truth of the following allegations in Plaintiff's complaint in considering Defendant's 12(b)(6) motion to dismiss. On December 8, 2018, at approximately 3:00 to 3:30 a.m., Plaintiff, a 27-year-old African-American and Hispanic-American male, alleges an incident with the individual LBPD officer Defendants occurred outside an establishment known as Wales and Tales located at 916 W. Beech Street, Long Beach, New York. (Compl. ¶¶ 19, 20.) The individual LBPD Defendants, all of whom are white, were responding to a disturbance nearby at W. Beech Street and Virginia Avenue. (*Id*. ¶¶ 21, 24.) The disturbance reportedly involved "Caucasian persons" who Plaintiff alleges were confronted by the police while fighting, but who were also permitted to leave without police charges. (*Id*. ¶ 22, 23.) As

---

[1] As discussed in greater detail *infra*, given the representations made in a second signed declaration by Plaintiff's counsel (*see* ECF No. 36, Sept. 13, 2020, Declaration of Frederick Brewington ("Second Brewington Decl.")), these facts are drawn solely from the Complaint, and not from any video evidence submitted to the Court.

2

Plaintiff and his friends, Cedric Coad and Rashawn Weed, also African-American males, left Wales and Tales to wait for a car service, Long Beach Police Officers "immediately" approached the group. (*Id.* ¶¶ 21, 23.)  Specifically, Plaintiff alleges the officers approached Mr. Coad who "was not engaged in any unlawful, violent or improper behavior," and "began to antagonize him, using abusive and disrespectful language and then ultimately slammed him to the ground and placed him under arrest" in the middle of the street on Virginia Avenue. (*Id.* ¶ 23.)

Plaintiff, on the opposite side of the intersection from Mr. Coad, was told to "'back up' onto the sidewalk" by the officers. (*Id.* ¶ 24.)  Plaintiff abided by the directive and began to record the officers' actions on his cellphone and request their names and badge numbers. (*Id.* ¶¶ 24, 25.)  The officers did not respond to Plaintiff's questions, and instead began to shine flashlights in the direction of Plaintiff's recording phone. (*Id.* at 25.)  While on the sidewalk recording the officers, plaintiff was approached from behind and slammed onto the concrete. (*Id.* ¶ 26.)  "Not fully clear as to what had happened and who had assaulted him, Plaintiff then immediately attempted to get back up from the ground," and Officers Wiemann and Walsh grabbed Plaintiff and caused him to strike his face, head and upper torso against the concrete, rendering him semi-

3

or unconscious.  (*Id*. ¶¶ 26, 27.)  Other officers joined
Officers Wiemann and Walsh to handcuff Plaintiff "wrongfully and
abusively" causing Plaintiff "great pain, injury, humiliation
and embarrassment."  (*Id*. ¶ 29.)  "Based on surveillance video
tape, which captured accounts at the scene of the incident at
the time," Plaintiff was approached and victimized by the
Defendant officers.  (*Id*. ¶ 31.)

Following Plaintiff's arrest, he was taken to the Long
Beach Police Department precinct.  (*Id*. ¶ 36.)  Plaintiff
alleges he repeatedly asked to call his family and requested
medical attention but was denied all requests for seven to nine
hours.  (*Id*.)  At this point Plaintiff received "minimal"
medical attention from two paramedics and was released from
custody pending a court appearance in January 2019.  (*Id*. ¶ 36,
37.)  Plaintiff was charged with Resisting Arrest, Obstruction
of Governmental Administration and Disorderly Conduct.  (*Id*. ¶
40.)  The Long Beach Police officers continued to participate in
Plaintiff's prosecution for the duration of the charges.  (*Id*. ¶
34.)

Plaintiff was arraigned in Long Beach City Court on
December 10, 2018.  (*Id*. ¶ 49.)  Plaintiff pled not guilty to
all charges and maintained his innocence throughout the
litigation.  (*Id*. ¶ 34.)  Through his attorneys, Plaintiff
served discovery demands and an omnibus motion for dismissal of

4

all charges and other relief.  (*Id*. ¶¶ 50, 51.)  On June 27,
2019, Judge William Miller dismissed all charges finding each
was "legally insufficient."  (*Id*. ¶ 54.)

Plaintiff alleges that as a result of the Defendant
officers' use of excessive force, he sustained multiple injuries
including, but not limited to, a concussion, post-concussion
syndrome, a pterygoid plate fracture, TMJ injury, lacerations
and cuts (including on his face), a chipped tooth, as well as
wrist and shoulder injuries described as "a complex tear of the
posterior labrum both horizontal and obliquely, injury to the
adjacent labral capsular junction, a displaced labral flap with
the tear extending to th[e] superior labrum where there is a
small nondisplaced labral flap, an additional tear along the
anterior inferior chondral labral junction and a small region of
chondral delamination of the posterior glenoid adjacent to the
labral tear of approximately 3mm."  (*Id*. ¶ 38.)  Plaintiff
required at least two surgeries to address his physical
injuries.  (*Id*.)

In addition to his physical injuries and pain,
Plaintiff alleges he suffered "embarrassment, mental pain and
suffering, incarceration, damage to his name and reputation,
court fees, legal fees and costs, medical costs/fees, property
damage and other monetary damages including but not limited to
loss of employment and income" due to the officers present at

his arrest and the related, ensuing incidents.  (*Id.* ¶ 38.)  At the time of filing his Complaint, Plaintiff alleges he continued to suffer from sleeplessness, night terrors, physical disfigurement, scarring, abnormalities in movement, pain, and aching attributed to Defendants' actions and inactions.  (*Id.* at 58.)

## II.  Procedural Background

Plaintiff commenced this action through his attorney on April 24, 2020, and filed proof of service.  (*See generally*, ECF No. 1, Compl.; ECF Nos. 8, 10.)  On July 10, 2020, Defendants' counsel filed a letter with the Court seeking a pre-motion conference to file a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and the Court's individual practice rules.  (ECF No. 13, Defs. Letter.)  The Defense letter states that "the incident that forms the basis of the Complaint was captured on video" and that "the video recording of the incident, which is an integral part of the Complaint, may be considered by the Court on a Rule 12(b)(6) motion."  (*Id.*)  Plaintiff filed a letter in response on July 22, 2020, noting that no discovery had been conducted in the case, that Defendants' application should be denied, and that Defendants should be precluded from moving to dismiss.  (ECF No. 14, Pl. Letter, July 22, 2020.)  Plaintiff did not dispute or

otherwise address the video evidence mentioned in Defendants'
pre-motion conference letter.

       The Court granted Defendants' request for a pre-motion
conference, held telephonically on August 4, 2020.  (*See* Dkt.
Orders July 16, 2020, July 24, 2020.)  At the pre-motion
conference, the parties discussed Defendants' anticipated motion
to dismiss, and "[c]ounsel for Defendants agreed to promptly
provide counsel for Plaintiff with a copy of the video
referenced in Defendants' letter requesting a pre-motion
conference."[2]  (Min. Entry, August 4, 2020.)  Defendants' counsel
reported by letter dated August 6, 2020, that "[a]fter the
conference, [he] sent Plaintiff's counsel a copy of the video
recording we propose submitting to the Court" and requested an
extension for the date by which the parties would file their
"joint letter to the Court with the agreed upon video
recording."  (ECF No. 16, Defs. Letter, Aug. 6, 2020.)  In a
follow up letter dated August 21, 2020, the parties requested an
extension of time to submit their joint letter to the Court
"with the agreed upon video recording(s)."  (ECF No. 18, Joint
Letter, Aug. 21, 2020.)  Subsequently, Defendants' counsel, on
behalf of the parties, submitted a joint letter, dated August

---

[2] The Court notes that although a transcript was prepared for the August 4,
2020, pre-motion conference, there are substantial gaps in that transcript
due to telephonic connectivity issues attributed to Tropical Storm Isaias,
and as a result, the record available from the transcript is limited.

26, 2020, representing that counsel had conferred regarding the videos of the incident and a proposed briefing schedule for Defendants' motion to dismiss, and attaching "three videos referenced in the Complaint."  (ECF No. 19, Joint Letter, Aug. 27, 2020.)  The Court accepted the parties' joint representations, as Plaintiff's counsel did not dispute any statements in the August 26, 2020, letter.  On August 28, 2020, the Court issued a scheduling order adopting the parties' proposed briefing schedule regarding the Defendants' 12(b)(6) motion, and noting that, "[t]he Court is in receipt of three videos of the incident giving rise to this action[...] as ordered by the Court during the August 4, 2020 pre-motion conference."  (Scheduling Dkt. Order, Aug. 28, 2020.)  The Court further stated that, "[t]he Court expects that in their briefs, the parties will address their respective views as to whether the Court can consider the aforementioned videos at this stage." (*Id.*)

On September 4, 2020, Defendants served a Motion to Dismiss pursuant to Rule 12(b)(6) on Plaintiff.  Defendants move to dismiss on the following bases: (1) the Long Beach Police Department is not a proper defendant, (2) Plaintiff's Section 1981 claim is subsumed by his Section 1983 claims, (3) the Complaint fails to adequately plead a *Monell* claim, (4) the Complaint fails to state a claim for excessive force and failure

to intervene, (5) the Complaint fails to state claims for false
arrest, malicious prosecution, and abuse of process claims, (6)
the race discrimination claim should be dismissed for failure to
state a claim, (7) the Complaint fails to state a claim under
the First Amendment, and (8) Plaintiff's requests for punitive
damages against the city must be stricken.  (ECF No. 24, Mem. of
Law in Support of Defendants' Mot. to Dismiss the Compl. ("Defs.
Mem.").)  In Defendants' moving submission, Defendants' counsel,
Howard M. Miller, filed an affidavit to which he annexed three
video Exhibits and represented as follows: Exhibit A is "a copy
of a video recording that was provided to me by Plaintiff's
counsel that is reference in paragraph '31' of the Complaint,"
and that Exhibits B and C are "two additional videos provided to
me by the Corporation Counsel of the City of Long Beach that
show the incident recorded in Exhibit 'A' from slightly
different angles".  (ECF No. 23, Affidavit of Howard Miller,
Esq. ("Miller Aff.") ¶¶ 2, 3.)

        Plaintiff filed a memorandum in opposition on October
19, 2020, along with a declaration from Plaintiff's counsel, Mr.
Brewington.  (*See* ECF No. 25, Decl. of Frederick K. Brewington,
Esq. ("Brewington Decl."); *see also* ECF No. 26, Pl. Mem. in
Opp'n. ("Pl. Opp'n.").)  Mr. Brewington's declaration states
that Plaintiff agreed: (1) the Long Beach Police Department was
not a proper defendant, (2) that all Plaintiff's Section 1981

claims were subsumed by his section 1983 claims, and (3)
punitive damages are unavailable against the City.[3]  (ECF No. 25,
Brewington Decl. ¶ 8.)  Mr. Brewington also declared that the
"surveillance video" of the incident referenced in Plaintiff's
Complaint, which was not provided to the Court, "was video that
was identified during the early part of my representation of Mr.
Benny during his criminal prosecution. My memory is that it was
not the video later provided to our office by our client and was
not the full video taken from the scene by my client or any of
his friends." (*Id*. ¶ 3.)  Mr. Brewington further declared that
"Exhibit A (labeled in our fileVideo-1.mov) to the declaration
of Herman Miller is video that I obtained from my client and
provided to defendants' counsel at the direction of the Court,
after [Defendants] claimed they had video evidence, and the
Court suggested I provide it to them."  (Brewington Decl. ¶ 4.)

        Defendants filed a reply memorandum in further support
of their motion to dismiss.  (ECF No. 27, Defs. Reply Mem. of
Law.)  The fully briefed motion to dismiss, declaration,
opposition, reply, and related exhibits were filed on October
30, 2020.  (*See* ECF Nos. 22-27.)

_____

[3] The Court notes Plaintiff did not defend against, and instead concedes,
Defendants' arguments regarding his claims against the LBPD, claims pursuant
to § 1981, and any claim for punitive damages against the City, and thus the
Court considers those claims to be abandoned and dismisses them. *See e.g.*,
*Jennings v. Hunt Companies*, 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019)
(dismissing claims where plaintiff acknowledged the issues could not survive
and mounted no defense of them).

Plaintiff's counsel filed a letter on July 28, 2021, regarding the status of the motion to dismiss, and inquiring as to whether the Court required anything further from the parties. (*See* ECF No. 34, Pl. Status Letter.)  In response, after further reviewing the parties' submissions, the Court issued an Order on September 10, 2021 (*see* Dkt. Order, Sept. 10, 2021), noting that Plaintiff's counsel had failed to adequately respond to the Court's August 28, 2020 Order, directing the parties to address in their motion papers "whether the Court can consider the aforementioned videos" (referenced as the "three videos referenced in the Complaint" in the parties' joint letter dated August 26, 2020 (*see* ECF No. 19, Joint Letter, Aug. 27, 2020.)) at the motion to dismiss stage.  (*See id*.)  In particular, the Court noted that, in his opposition to Defendants' motion to dismiss, Plaintiff's counsel filed a signed declaration that only contradicted and confused the record as to the parties' August 26, 2020, letter and the Court's August 28, 2020 Order, and failed to definitively clarify whether Plaintiff had relied on any of the videos submitted as Exhibits A-C to the Declaration of Howard Miller in the drafting of his Complaint. (*See id*.)  The Court ordered Plaintiff's counsel to: (1) to provide a signed declaration stating whether Plaintiff relied on the videos at Exhibits A, B, or C, in the drafting of his Complaint; (2) to provide the surveillance video referenced at ¶

11

31 of the Complaint to the Court and Defense counsel; and (3) to state whether Plaintiff relied on any other videos in the drafting of his Complaint, and provide copies of the videos, if any.  (*See id.*)

Plaintiff's counsel, Mr. Frederick Brewington, filed a sworn declaration in response to the Court's September 10, 2021, Order, which, for the first time, represented that Plaintiff's counsel did not rely on "the videos attached as Exhibits A-C to the Declaration of [Howard] Miller, dated September 4, 2020." (Second Brewington Decl. at ¶ 2.)  Regarding the "surveillance video" directly referenced in the Complaint, the Second Brewington declaration stated:

> When Mr. Benny and his family first consulted with us to undertake his representation in the criminal charges underlying this case, my office tried to locate the video evidence. It is my memory that I viewed a video that appeared to show a part of the interaction between Mr. Benny and the police. I cannot recall the source of the images shown to me, but my best memory is that I thought it looked like surveillance footage. That is my best recollection. However, that was not in our possession and/or control and is not in our possession. It was from my memory of that footage that I worked on and drafted the Complaint, not any other footage, which we eventually obtained from our client.

(*Id.* at ¶ 3.)  The Second Brewington declaration further represents that Mr. Brewington "asked Mr. Benny if he recalls

the video. He does not. I am at a loss to the source of the
video or who showed it to me. I do recall that I viewed [the
video] for a very brief time[.]" (*Id.* at ¶ 4.)  Finally, Mr.
Brewington states that he "did not rely upon any videos other
than the one that I remember seeing early on in our taking on
the representation of Mr. Benny[.]" (*Id.* at ¶ 7.)

Given Plaintiff's agreement that certain of his claims
are not viable, the Court considers those claims withdrawn, and
accordingly 1) dismisses the Long Beach Police Department as a
defendant, 2) dismisses Plaintiff's Section 1981 claims, and 3)
to the extent Plaintiff seeks punitive damages against the City
of Long Beach, the requested relief is stricken.  (ECF No. 24,
Mem. of Law in Support of Defendants' Mot. to Dismiss the Compl.
("Defs. Mem.").)  The Court considers only Plaintiff's remaining
claims.

**LEGAL STANDARD**

**I.   Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), "a
complaint must plead 'enough facts to state a claim to relief
that is plausible on its face.'" *Ruotolo v. City of New York*,
514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its
face when plaintiff pleads sufficient factual content to
"allow[] the court to draw the reasonable inference that the

13

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion to dismiss, a district court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted). Generally, the scope of review on a Rule 12(b)(6) motion is limited to the complaint and if a court is presented any "matters outside the pleadings," it must exclude the extrinsic material or treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d); *see Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). There are several exceptions, however, including "documents incorporated in [the complaint] by reference" and documents which are "integral to plaintiff['s] claim." *Cortec*, 949 F.2d at 47-48; *Massey v. On-Site Manager, Inc.*, No. 11-cv-2612 (BMC), 2011 WL 4356380 (E.D.N.Y. Sept. 16, 2011) (quoting *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("[w]e may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference.").

14

## II.   Converting to Motion for Summary Judgment

District courts have two options when confronting extraneous documents on a motion to dismiss: "the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Thomas v. City of New York*, No. 17-cv-06079 (ARR)(JO), 2018 WL 5791965, at *5 (E.D.N.Y. Nov. 5, 2018) (quoting *Fonte v. Bd. of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988). "The ultimate decision of whether to convert a Rule 12(b)(6) motion into a Rule 56 motion is discretionary." *Id.* (quoting *Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 357 (S.D.N.Y. 2016)); *see also Energizer, LLC v. MTA Trading, Inc.*, No. 20-cv-1583 (MKB), 2021 WL 2453394, at *3, n. 6 (E.D.N.Y. June 16, 2021) (quoting *Steadfast Ins. Co. v. T.F. Nugent Inc.*, No. 20-cv-3959, 2021 WL 149084, at *2 n.2 (S.D.N.Y. Jan. 15, 2021) ("Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a ... motion [to dismiss], and thus complete discretion in determining whether to convert the motion to one for summary judgment." (alterations in original) (internal citation omitted)).

15

## DISCUSSION

### I. Municipal Liability, *Monell* Claim (Fifth Cause of Action)[4]

Plaintiff's Fifth Cause of Action alleges municipal liability against the City of Long Beach pursuant to 42 U.S.C. § 1983 ("Section 1983").  Defendants move to dismiss Plaintiff's claims against the City.  (*See* Defs. Mem. at 7-9.)  Discerning any factual bases for Plaintiff's vague and conclusory claims is no small feat; for his fifth cause of action, Plaintiff makes a series of allegations against the City, including that the City "permitted and tolerated a pattern and practice of unjustified, unreasonable and illegal uses of force, abuse of authority, beatings, and uses of weapons" (Compl. ¶ 131), "failed to identify [various abuses] . . . to the extent that it has become the custom of the CITY to tolerate the improper abuses" (*id*. ¶ 135), "permitted a practice of improper investigation, supervision, discipline and retention" (*id*. ¶ 136), and "neglected, failed and/or delayed in administering an investigation of the circumstances[.]" (*Id*.)  Plaintiff also alleges that incidents of "beatings, abuse of authority, illegal use of force, and uses of weapons" were "covered up with official claims that the beatings, use of force, and uses of

---

[4] Plaintiff's claims regarding municipal liability are not based on the video evidence in this case, and the Court will evaluate these claims under Rule 12(b)(6) on the face of the Complaint.

16

weapons were justified and proper," and that the City has failed to maintain a proper system of investigation of these incidents." (*Id.* ¶¶ 132-33.) To sustain a claim for relief under Section 1983 against a municipal defendant, "a plaintiff must show the existence of an officially adopted policy or custom, and a direct causal connection between that policy or custom and the deprivation of a constitutional right." *Duncan v. City of New York*, No. 11-cv-3826(CBA)(JO), 2012 WL 1672929, at *2 (E.D.N.Y. May 14, 2012) (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). Plaintiff's allegations, even if accepted as true, fail to state a claim for municipal liability under Section 1983 and, consequently, this claim is dismissed.

Plaintiff alleges a series of broad and conclusory statements devoid of supporting facts in his claim for municipal liability. (*See* ¶¶ 131-137.) Plaintiff alleges generally that the City "permit[ed] a pattern and practice," that the City "has failed to respond to the continuing and urgent need to prevent, restrain, and discipline police officers," and that the City "has failed to find that civilian complaints made against police officers are founded or valid in anyway[.]" (*Id.* at ¶ 134.) Plaintiff further alleges—"upon information and belief"—certain flaws in the City's brutality review process, none of which rise above a speculative level. (*Id.* at ¶ 137a.-e.); *see also*

17

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010)(quoting *Twombly*, 550 U.S. at 555)(a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'").  The most specific, yet insufficient and conclusory, allegations Plaintiff makes are that the alleged "pattern and practice of unjustified, unreasonable and illegal uses of force," are "especially true in certain portions of the City, especially in the community commonly known as North Park," where Plaintiff states "[t]he vast majority of persons residing in North Park are Black African-Americans or Hispanic persons." (ECF No. 1, Compl. at ¶ 132.)  Again, Plaintiff does not support his allegations with any specific facts, instances, statistics, or other factual allegations connecting the alleged policy or custom and the alleged deprivation of Plaintiff's rights.

    To the extent plaintiff alleges failure to discipline officers for complaints of excessive force (*see e.g.*, Compl. at ¶¶ 131, 132, 134, 135, 136), the Second Circuit has held "a municipal policy of deliberate indifference to the use of excessive force by police officers may be shown by evidence that the municipality had notice of complaints of the use of such force but repeatedly failed to make any meaningful investigation into such charges." *Outlaw v. City of Hartford*, 884 F.3d 351, 380 (2d Cir. 2018).  Plaintiff alleges no other specific

18

instances in which individuals filed complaints against the
officers and the City failed meaningfully to respond, beyond his
conclusory allegations that "the CITY has failed to find that
civilian complaints made against police officers are founded or
valid in anyway." (Compl. ¶ 134.) Thus, the Court concludes
that Plaintiff failed sufficiently to allege that there was a
policy, pattern or repeated failure to discipline police
officers by the City. *See Scott v. City of Rochester*, No. 17-
cv-6359 (FPG), 2018 WL 4681626, at *5 (W.D.N.Y. Sept. 28, 2018)
(declining to find a pattern of failure to discipline where
plaintiff alleged three instances of failures to investigate
complaints).

    To the extent Plaintiff alleges a policy or custom of
tolerating improper police actions (*see* Compl. ¶¶ 134, 135),
Plaintiff's allegations cannot withstand a Rule 12(b)(6) motion
to dismiss. "*Monell*'s policy or custom requirement is satisfied
where a local government is faced with a pattern of misconduct
and does nothing, compelling the conclusion that the local
government has acquiesced in or tacitly authorized its
subordinates' unlawful actions." *See Green v. City of Mount
Vernon*, 96 F. Supp. 3d 263, 305-06 (S.D.N.Y. 2015) (quoting
*Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir.2007) (citing
*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. at 737 (1989).

Plaintiff's conclusory allegations, including that "[t]he foregoing acts, omissions, systemic flaws, policies and customs of the Defendants CITY and LBPD caused the Defendant Officers to believe that brutality and other improper actions would not be aggressively, honestly and properly investigated," and "[a]s a consequence of Defendants' wrongful actions . . . Plaintiff was deprived of his freedom[,]" (Compl. ¶¶ 138-39) are insufficient to allege "an affirmative link between the municipality's policy and the particular constitutional violation alleged." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 809 (1985).

Even accepting as true all factual allegations from the Complaint and drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff cannot sustain a Section 1983 claim for municipal liability against the City. Therefore, Plaintiff's municipal liability claims against the City must be, and are, dismissed.

## II. Videos, Materials Outside the Pleading at Rule 12(b)(6) Motion to Dismiss

On August 26, 2020, the parties jointly filed three videos of the incident alleged in the Complaint (hereafter, "the Videos," "Video Exhibits A, B, C," or "Video Exhibits A-C") as part of a joint letter submission, which Defendants argue should be considered by the Court at the motion to dismiss stage, and which Plaintiff argues should not be considered by the Court.

(*See* ECF No. 19, Joint Letter; ECF No. 23, Miller Aff., at ¶ 4; ECF No. 25, Brewington Decl., at ¶¶ 2-5.)  In opposition to the Defendants' motion to dismiss, Plaintiff's counsel provided a second signed declaration at the direction of the Court, in which Plaintiff's counsel declared that he did not rely on the Videos in drafting the Complaint.  (*See* Second Brewington Decl. ¶ 2.)  Plaintiff's counsel vaguely describes yet a fourth video that he viewed once during Plaintiff's criminal case, claims not to have retained, and has continued to withhold from the Court. (*Id.* at ¶ 3.)  Plaintiff's counsel claims he relied on this fourth video from memory in drafting the Complaint.  (*Id.*) Plaintiff's counsel represents that Plaintiff himself does not recall this video.  (*Id.* at ¶ 4.)  The Court is very troubled by Plaintiff's counsel's sworn statements and conduct.

As a motion to dismiss under Rule 12(b)(6) tests the sufficiency of the factual allegations in a complaint, "the district court is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  The Court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142,

21

150 (2d Cir. 1993) (internal citations omitted).  Even if a
document is not incorporated by reference, "the court may
nevertheless consider it where the complaint 'relies heavily
upon its terms and effect,' which renders the document
'integral' to the complaint." *Chambers v. Time Warner, Inc.*,
282 F.3d 147, 153 (2d Cir. 2002) (citing *Int'l Audiotext Network
v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).  The
Second Circuit noted that this standard is occasionally
misinterpreted, and clarified that "a plaintiff's *reliance* on
the terms and effect of a document in drafting the complaint is
a necessary prerequisite to the court's consideration of the
document on a dismissal motion; mere notice or possession is not
enough." *Id*. (emphasis in original) (citing *Cortec*, 949 F.2d at
47-48).

"[C]ourts have considered video evidence in
conjunction with 12(b)(6) motions where the tape has either
been: (1) incorporated into the pleadings by reference; (2)
offered by the plaintiff as part of its pleadings; or (3) the
plaintiff has incorporated the video by reference after the
defendant introduced the video." *Mosca v. City of New York*, No.
17-cv-4327 (SJF)(SIL), 2018 WL 3151704, at *3 n.3 (E.D.N.Y. Apr.
24, 2018), *report and recommendation adopted*, No. 17-cv-4327
(SJF)(SIL), 2018 WL 2277837 (E.D.N.Y. May 18, 2018).  Here, the
Videos were not offered by Plaintiff as part of his Complaint as

22

exhibits, nor did Plaintiff incorporate the Videos after
Defendants introduced them.  (*See generally*, Compl.; Pl. Opp'n.
at p. 6.)  The Court considers, then, whether the Videos
currently at issue were incorporated into the pleadings by
reference.  Defendants argue that the reference made to
"surveillance video tape" at paragraph 31 of the Complaint means
the Videos were incorporated by reference, and accordingly, the
Court may consider the Videos on the Rule 12(b)(6) motion.
(Defs. Mem. at p. 1, n. 2.)  Defendants further argue that the
Videos are "otherwise integral to the complaint."  (*Id.*, at p.
6.)

       Here, in connection with the Rule 12(b)(6) inquiry,
Plaintiff's Complaint at paragraph 31 references video tape
footage as follows:

> Based on surveillance video tape, which
> captured accounts at the scene of the
> incident at the time, Plaintiff was
> approached by the above-stated DEFENDANT
> OFFICERS as stated above and was victimized
> by POLICE OFFICER JOSEPH WIEMANN, POLICE
> OFFICER ROCCO WALSH and OFFICERS JOHN DOES
> 1-10[.]

(Compl. at ¶ 31.)

       In Defendants' July 10, 2020, letter to the Court
requesting a pre-motion conference, Defendants stated: "The
video recording of the incident, which is an integral part of
the Complaint, may be considered by the Court on a Rule 12(b)(6)

23

motion." (ECF No. 13, Defs. July 10, 2020, Letter, at p. 1.)
Defendants' letter further describes what the "video recording
of the incident shows[.]" (*Id*. at p. 2.)  Plaintiff filed a
response letter in opposition to Defendants' request for a pre-
motion conference, but did not deny, much less respond to,
Defendants' assertions or characterizations regarding the video
recording of the incident that was described at paragraph 31 of
the Complaint. (ECF No. 14, Pl. July 22, 2020, Reply Letter.)

The Court's Minute Entry describing the August 4,
2020, pre-motion conference states: "Counsel for Defendants
agreed to promptly provide counsel for Plaintiff with a copy of
the video referenced in [ECF No.] 13 Defendants' letter
requesting a pre-motion conference." (Min. Entry, Aug. 4,
2020.)  Following the August 4, 2020, pre-motion conference held
before the Court, the parties jointly submitted the three Videos
as attachments to a joint letter, which stated in relevant part:
that the parties had conferred, and that "[t]his letter is
submitted by the parties regarding the Defendants' request to
file a Rule 12(b)(6) motion.[...] Attached are three videos
referenced in the Complaint." (*See* ECF No. 19, Joint Letter, at
p. 1.)

Plaintiff's counsel, Mr. Brewington, never disputed
the August 26, 2020, joint letter describing the three videos as
being "referenced in the Complaint."  Instead, he asserts in his

first declaration, filed in opposition to Defendant's motion to

dismiss, that the reference to the "surveillance video tape" is

an "isolated statement" in the Complaint, he attempts to explain

the relationship between the three Videos, the video described

at paragraph 31 of the Complaint, and the Complaint as follows:

> The video that we referenced in paragraph 31
> of the Complaint was video that was
> identified during the early part of my
> representation of Mr. Benny during his
> criminal prosecution. My memory is that it
> was not the video later provided to our
> office by our client and was not the full
> video taken from the scene by my client or
> any of his friends. In fact, it was based on
> what was initially viewed by me that our
> office sent out letters to nearby
> establishments for them to preserve their
> video images. Mr. Benny demonstrates in the
> accompanying memorandum of law that this
> reference does not mean he incorporated the
> video into the Complaint.
>
> Exhibit A (labeled in our fileVideo-1.mov)
> to the declaration of Herman Miller is video
> that I obtained from my client and provided
> to defendants' counsel at the direction of
> the Court, after [Defense counsel] claimed
> they had video evidence, and the Court
> suggested I provide it to them. Exhibits B
> and C represents a segment of a video.
> Defendants' counsel advised me that the
> source from which they obtained Exhibit B
> and C was Facebook.

(ECF No. 25, Brewington Decl. ¶¶ 3-4.)  Mr. Brewington

failed to state in his first declaration whether he

relied on Video Exhibits A-C in drafting the

Complaint.  He has not provided any videos upon which

he relied, including the video referenced at paragraph
31 of the Complaint.

In his memorandum of law in opposition to Defendants'
motion to dismiss, Plaintiff asserts that the "surveillance
video" referenced in his Complaint was "video identified to his
counsel during his representation of Mr. Benny during the
criminal prosecution." (Pl. Opp'n. at pp. 5-6.) Plaintiff
further states that the video referenced in his Complaint was
"not the full video taken from the scene by Mr. Benny or his
friends." (*Id*. at 6.) Then, though it is no longer clear to
the Court to *which* video Plaintiff refers, Plaintiff's
memorandum of law further states that, "[Mr.] Benny has not
offered *the video* as part of his pleadings. Nor has he
incorporated *the video* following the Defendants' introduction of
it." (*Id*. at 6.) (emphasis added.) This confusing and
conflicting series of representations by Plaintiff's counsel
were exacerbated when the Court, on September 10, 2021, ordered
a direct answer from Plaintiff's counsel as to the video
evidence at issue. (*See* Dkt. Order, Sept. 10, 2021.) In
response, Plaintiff's counsel, Mr. Brewington, submitted a
second signed declaration, stating for the first time that, he
"did not rely on the videos attached as Exhibits A-C to the
Declaration of [Howard] Miller, dated September 4, 2020."
(Second Brewington Decl. at ¶ 2.) Mr. Brewington again failed

26

to produce the video(s) upon which he relied, including the "surveillance video" mentioned in paragraph 31 of the Complaint. He states that he was unable to locate the actual "surveillance video" referenced in the Complaint, could not "recall the source of the images shown" to him, that the surveillance video "was not in our possession and/or control and is not in our possession," and that Mr. Benny himself does not recall the video. (*Id.* at ¶¶ 3-4.)  Mr. Brewington declares he is "at a loss as to the source of the video," or if the surveillance video referenced in the Complaint even is surveillance video. (*Id.* at ¶ 3.)  Instead, Mr. Brewington only offers that "my best memory is that I thought it looked like surveillance footage." (*Id.*)

The Court considers Mr. Brewington's confounding representations and delayed admission about the surveillance video referenced in paragraph 31 of the Complaint to be unproductive, inconsistent with his role as an officer of the court and his obligations under Rule 11, and a needless expenditure of the resources of the Court and the Defendants' counsel.  Defendants referred to the video recording of the incident as being referenced by and integral to the Complaint in their July 2020 letter requesting a pre-motion conference; the Court memorialized Defendants' reference to the video in the Court's Minute Entry for the pre-motion conference; and the

parties' joint letter of August 26, 2020, explicitly described the three Videos submitted as the videos referenced in the Complaint. (ECF No. 13, Defs. July 10, 2020, Letter, at p. 1; Min. Entry, Aug. 4, 2020; ECF No. 19, Joint Letter, at p. 1.) Plaintiff, through his counsel, had ample opportunity, if not an obligation, to dispute or clarify the specific video evidence being referenced by the Complaint, discussed by, and finally jointly submitted by the parties in the months leading up to the filing of Defendants' motion to dismiss.  Plaintiff failed to do so.  Months later, faced with an additional Order in September 2021 from the Court regarding the video evidence, Plaintiff's counsel is unable to recall the source of the surveillance video footage referred to in the Complaint, but states under oath that none of the video evidence identified as Exhibits A-C in the possession of the parties and submitted to the Court was relied on in drafting the Complaint.  (Second Brewington Decl., at ¶¶ 2-4, 7.)  Plaintiff's counsel does not dispute in his Second Declaration dated September 13, 2021, that the video evidence identified as video Exhibits A-C depicts, at least in part, the incident giving rise to Plaintiff's claims.  (*Id.* at ¶ 2.) Despite stating that Plaintiff provided the video at Exhibit A to Defendants' counsel (*see id.* ¶ 2), and despite having been provided Exhibits B and C by Defendants' counsel (*see* Brewington Decl. at ¶ 4), Plaintiff's counsel notably has not moved to

withdraw any allegations of the Complaint that appear to be contradicted by the Videos as would be expected from an officer of the court. *See Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 719 (S.D.N.Y. 2015) (noting that after certain videos were surfaced by Defendants, plaintiff "responded, in part, by striking [a corresponding paragraph] of the complaint."). Instead Plaintiff's counsel admits he cannot provide the video referenced in his Complaint that allegedly supports his client's claims. (Second Brewington Decl., at ¶¶ 3, 6.)

As noted *supra* and explained further here, the Court at the motion to dismiss stage must limit its consideration to documents attached to the Complaint as exhibits, incorporated by reference in the Complaint, or documents that the Complaint relies on heavily such that the documents are integral to the Complaint. *See Chambers*, 282 F.3d at 153 (citing *Int'l Audiotext Network*, 62 F.3d at 72). "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents.... [and] [t]o be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." *Walia v. Napolitano*, No. CV112512(SJF)(SIL), 2017 WL 10378189, at *9 (E.D.N.Y. Dec. 4, 2017) (quoting *Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 268 (E.D.N.Y. 2011) (quoting *DeLuca v. AccessIT Group*,

29

*Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks, citations, and alterations omitted)).

For the disputed Video Exhibits A-C to be considered by the Court at this 12(b)(6) motion, in addition to Plaintiff having actual notice of the Video Exhibits A-C, Plaintiff's Complaint would have had to rely heavily upon the contents of the Videos, such that the material was integral to the Complaint. *See Chambers*, 282 F.3d at 153. According to Plaintiff's counsel's second signed declaration, the Court cannot consider Exhibits A-C, given Plaintiff's counsel's declaration that he did not rely on any of the Videos in drafting the Complaint. Therefore, as Plaintiff did not rely on the Video Exhibits A-C, and the Videos are thus not integral to the Complaint, the Court finds it must decline to consider the Video Exhibits A-C at the 12(b)(6) motion to dismiss stage.

Importantly, however, neither party has disputed the accuracy or authenticity of the Videos, as neither party has disputed that the Videos depict the relevant events of December 8, 2018, beginning at approximately 3:00 a.m. to 3:30 a.m. in Long Beach, New York. It is not clear to the Court how the "surveillance video" referenced at paragraph 31 in Plaintiff's Complaint—which Plaintiff and Plaintiff's counsel claim they are unable to locate and produce—would differ from the Video Exhibits A-C submitted by the parties to the Court. The parties

30

agree that Video Exhibits A-C provide relevant, clear, and contemporaneous, real-time evidence of the events giving rise to the Complaint.

The Federal Rules of Civil Procedure establish two options for district courts when matters outside the pleadings are presented in relation to a 12(b)(6) motion: "the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Fonte*, 848 F.2d at 25. Assuming the allegations in the Complaint to be true in considering the Defendants' 12(b)(6) motion, the Court denies without prejudice Defendants' motion to dismiss the Plaintiff's excessive force, failure to intervene, false arrest, malicious prosecution, abuse of process, race discrimination, and First Amendment claims with leave to renew as a motion for summary judgment.

The Court concludes that it is not in the interests of justice or efficiency to consider the claims presently before the Court without considering the available, uncontested video evidence of the events that gave rise to the action. The Court, accordingly, will exercise its discretion in the interests of fairness and judicial economy, and grants leave to move for summary judgment pursuant to Federal Rule of Civil Procedure 56

on the remaining, undismissed claims.  The Court will consider the Video evidence previously submitted by the parties, along with any other relevant, admissible evidence that either party submits into the record if a motion for summary judgment is properly before the Court.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  First, based on the agreement of Plaintiff's counsel, the Long Beach Police Department is DISMISSED as a defendant; Plaintiff's Section 1981 claims are DISMISSED; and, to the extent any request for punitive damages against the City of Long Beach were sought, the request is STRICKEN. Second, as to the Fifth Count in Plaintiff's Complaint, Plaintiff's claims for municipal liability against the City of Long Beach pursuant to Section 1983 are DISMISSED as a matter of law pursuant to Rule 12(b)(6) for failure to state a claim.  The Court DENIES WITHOUT PREJUDICE Defendants' motion to dismiss Plaintiff's excessive force, failure to intervene, false arrest, malicious prosecution, abuse of process, race discrimination, and First Amendment claims, with leave to file a motion for summary judgment.

If the parties intend to proceed with a summary judgment motion, the parties shall adhere to the following

briefing schedule: moving parties shall serve, but not file, their motion for summary judgment, including a 56.1 statement and supporting evidence, by October 8, 2021.  Opposing parties shall serve, but not file, their opposition upon opposing counsel by October 22, 2021.  Moving parties may serve a reply by October 29, 2021.  The parties shall file the fully-briefed motion papers to ECF in logical order on or before October 29, 2021.  If the parties do not intend to proceed with a summary judgment motion, the parties should promptly report to Magistrate Judge Steven Tiscione for supervision of discovery.


**SO ORDERED.**

Dated: Brooklyn, New York
September _23_, 2021


                                    __/s/ Kiyo A. Matsumoto___
                                    KIYO A. MATSUMOTO
                                    United States District Judge
                                    Eastern District of New York